State v. Correll

STATE OF NORTH CAROLINA v. RUSSELL SIDNEY CORRELL

No. 7827SC467

(Filed 7 November 1978)

1. Criminal Law § 71— shorthand statement of fact

In a homicide prosecution, a witness's testimony that defendant and his companion were laughing immediately after the shooting of the victims was competent as a shorthand statement of fact.

2. Homicide § 15.4— testimony that witness saw a murder —invasion of province of jury —harmless error

A witness's testimony that he "witnessed murder of motorcycle rider and girl" invaded the province of the jury and was erroneously admitted; however, its admission was harmless beyond a reasonable doubt where the jury, by its verdicts of not guilty on one charge and guilty of involuntary manslaughter on the other, rejected the witness's opinion and found that no murder had been committed.

3. Homicide § 21.7— second degree murder —sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution of defendant for second degree murder of two persons where it tended to show that defendant was carrying a pistol in his car when he encountered the two victims riding a motorcycle; defendant fired at the victims five or six times with an automatic pistol and killed them both; and defendant then drove away laughing.

4. Homicide § 21.9— involuntary manslaughter —sufficiency of evidence to support verdict

Even if the jury found that defendant acted in self-defense in firing his pistol at and killing a motorcycle driver, the evidence would support a verdict of involuntary manslaughter in the shooting death of a female passenger on the motorcycle where a State's witness testified that he saw the driver "falling over the bike and the bike started leaning over and the bullets hit the girl and she started falling backwards," and defendant testified that when he saw the two victims on the motorcycle beside his car, he got his gun, ducked down as far as he could in the car and started shooting with his hand above the window ledge, since the State's evidence would have allowed the jury to find that defendant negligently continued firing after the driver had fallen and the need for self-defense had passed, and defendant's testimony would have allowed the jury to find that defendant showed a heedless indifference to the rights and safety of others or a careless disregard of the consequences of his act.

APPEAL by defendant from *Brannon, Judge*. Judgment entered 12 January 1978 in Superior Court, GASTON County. Heard in the Court of Appeals 16 October 1978.

The defendant was charged in separate bills of indictment with the second degree murders of David Cramer, also known as Jack Nadulack, and India Payne. Upon his pleas of not guilty to each charge, the jury returned verdicts finding the defendant not guilty in the death of Cramer and guilty of the involuntary manslaughter of India Payne. From judgment sentencing him to imprisonment for a term of five years, the defendant appealed.

The State's evidence tended to show that David Cramer, who was generally known as Jack Nadulack, and India Payne were buying gasoline for Nadulack's motorcycle at a country store on 29 June 1977. Nadulack drove the motorcycle around the gas pumps as Payne paid for the gasoline. She then jumped onto the back of the moving motorcycle, and the two began to pull into the flow of passing traffic. They then slowed down and stopped beside a car driven by the defendant and containing another person. There were a few seconds of conversation between the occupants of the motorcycle and the occupants of the car followed by gunshots. The car then left at a high rate of speed, and the defendant and the other occupant appeared to be laughing.

When the Gaston County Life Saving Crew arrived, they found the bodies of Nadulack and Payne lying on the motorcycle. They moved Nadulack's body from the motorcycle and found a five-shot revolver underneath. The weapon was loaded with hollow point bullets which are a type of anti-personnel ammunition. It had not been fired.

Officer F. M. Dow of the Gaston County Police Department testified that he spotted a car similar to the one used in connection with the shooting shortly after the commission of that shooting. He followed the car to the home of the defendant's aunt. When Officer Dow stopped in front of the home, the defendant and Gary Teague came out. At that time the defendant said, "Fats was going to kill us and we shot him."

The defendant presented evidence tending to show that Nadulack had the reputation in the community of a dangerous and violent fighting man and often carried a handgun. The State stipulated that Nadulack was under indictment for several violent felonies including an assault with intent to kill on the defendant and the murder of one John Hastings. The defendant's evidence also tended to show that, after the death of Hastings, the defend-

ant began carrying a handgun for his own protection due to threats Nadulack had made against him.

Gary Teague testified that he was in the car with the defendant on the day of the shooting. While they were driving down a public road, Nadulack pulled up beside them on his motorcycle and pointed a pistol in the car window. The defendant slammed on brakes and Nadulack continued down the road. The defendant then took an alternate route and continued on his way. Later that day, having just entered onto a highway, the occupants of the car saw Nadulack leave the parking lot of a store on his motorcycle. He came straight toward them and forced them off the road. As the motorcycle came up beside the car on the driver's side, the defendant rolled down his window. Nadulack then said that the two of them were dead and produced a pistol. Teague ducked between the bucket seats of the car and did not see what happened, but he heard shots and the motorcycle falling against the car.

The defendant's testimony was essentially identical to Teague's with regard to events leading up to the shooting. The defendant testified that he pulled his pistol after seeing Nadulack produce a pistol. The defendant then ducked down into the car and held his pistol above the window ledge and began shooting. The defendant further testified that it was his intention "to shoot Nadulack and I had no intention of shooting anyone but him. I didn't know the second individual on the bike and didn't even know if it was male or female. My life was in danger and it didn't matter."

Other material facts are hereinafter set forth.

*Attorney General Edmisten, by Associate Attorney R. W. Newsom III, for the State.*

*W. J. Chandler for the defendant appellant.*

MITCHELL, Judge.

[1] The defendant first assigns as error the admission into evidence of certain conclusory remarks by the State's witnesses. In support of this assignment, the defendant contends the trial court erred in permitting a witness for the State to testify that the defendant and Teague were laughing immediately after the

shooting of Nadulack and Payne. The witness' statement that the two men were laughing was a shorthand statement of fact and a natural and instinctive inference drawn by the witness from his observations. As such, it was admissible. *State v. Dawson*, 278 N.C. 351, 180 S.E. 2d 140 (1971); 1 Stansbury, N.C. Evidence (Brandis Rev., 1973) § 125.

[2] The defendant further contends that the admission of testimony by one of the State's witnesses that he "witnessed murder of motorcycle rider and girl" was error. This statement of the witness' opinion tended to invade the province of the jury and to embody a question of law, and its admission was error. However, the admission of this testimony was harmless beyond a reasonable doubt as the outcome of the case was clearly unaffected by the error. G.S. 15A-1443(a). By its verdicts of not guilty on one charge of murder and guilty of involuntary manslaughter on the other, the jury specifically rejected the witness' opinion and found that no murder had been committed. As the witness' expression of opinion was not accepted by the jury, the admission of that opinion into evidence was clearly harmless beyond all doubt and does not constitute reversible error. *Schneble v. Florida*, 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972); *State v. Robbins*, 287 N.C. 483, 214 S.E. 2d 756 (1975).

[3] The defendant next assigns as error the denial by the trial court of his motions to dismiss which were made at the close of the State's evidence and at the close of all of the evidence. As the defendant introduced evidence at trial, we need not consider the trial court's denial of the first motion. G.S. 15-173. With regard to the denial of the defendant's motion to dismiss made at the close of all of the evidence, we must determine whether the evidence considered in the light most favorable to the State was sufficient to support findings by the jury that the offense in question had been committed by the defendant. *State v. Hines*, 286 N.C. 377, 211 S.E. 2d 201 (1975). When considered in the light most favorable to the State, the evidence reveals that the defendant was carrying a pistol in his car when he encountered Nadulack and Payne riding a motorcycle. He fired at them five or six times with an automatic pistol and killed both. He then drove away laughing. This evidence was sufficient to support the trial court's denial of the defendant's motion to dismiss.

[4]   The defendant next assigns as error the trial court's instructions to the jury that it could find the defendant guilty of involuntary manslaughter in the death of India Payne. Although the defendant was charged with the murder in the second degree of India Payne, the trial court was required to instruct the jury as to any included crime of lesser degree than that charged if there was evidence from which the jury could find that such included crime of lesser degree was committed. *State v. Hicks*, 241 N.C. 156, 84 S.E. 2d 545 (1954). Therefore, this assignment raises the issue of whether the record contains any evidence which would support a verdict of involuntary manslaughter in the death of India Payne. We think that it does.

Involuntary manslaughter is the unintentional killing of a human being without malice, proximately caused by *either* (1) an unlawful act not amounting to a felony or naturally dangerous to human life, *or* (2) a culpably negligent act or omission. *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). The defendant argues that, as the jury found he acted in self-defense in killing Nadulack, his firing of the pistol was lawful and would not support his conviction of the crime of involuntary manslaughter. This argument overlooks the second half of the definition of involuntary manslaughter.

Although we cannot know the basis for the jury's verdict finding the defendant not guilty of the murder of Nadulack, we may assume for purposes of this appeal that the defendant is correct and the jury determined that his actions with regard to Nadulack constituted justifiable self-defense. The fact that a person's intentional act of self-defense against one individual may be justifiable and lawful does not give him license to engage in such lawful act of self-defense in disregard of its consequences to others. Assuming that the defendant acted in self-defense in firing his pistol, he might, nonetheless, be guilty of involuntary manslaughter if he performed this otherwise lawful act in a culpably negligent manner which proximately resulted in the death of India Payne.

In order for an act to be culpably negligent, it "must be such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others." *State v.*

*Everhart,* 291 N.C. 700, 702, 231 S.E. 2d 604, 606 (1976). Here, one of the State's witnesses testified that, "I saw Mr. Nadulack falling over the bike and the bike started leaning over and the bullets hit the girl and she started falling backwards." The witness then observed the defendant drive off laughing. This testimony would have allowed the jury to find that the defendant negligently continued firing after Nadulack had fallen and the need for self-defense had passed.

Additionally, the defendant's own testimony was that he saw Nadulack and Payne on the motorcycle beside his car and "I got the .45, ducked down as far as I could in the car and started shooting. I had my hand above the window ledge." The defendant also testified that he did not intend to kill Payne. This evidence was sufficient to permit the jury to find that the defendant showed a heedless indifference to the rights and safety of others or a careless disregard of the consequences of his acts. It would also support a jury finding that the defendant unintentionally shot Payne resulting in her death. Therefore, there was evidence sufficient to support a verdict of guilty of involuntary manslaughter. The trial court did not err in instructing the jury with regard to involuntary manslaughter.

The defendant next assigns as error the trial court's instructions to the jury concerning the doctrine of transferred intent. As the jury found the defendant not guilty of any crime having intent as an element, any error concerning the doctrine of transferred intent was clearly harmless beyond any doubt.

The defendant received a fair trial free from prejudicial error, and we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.