HALLIE K. HOLLOWAY, SUE HOLLOWAY AND MINORS: DAMIEN LEE HOLLOWAY AND SWANZETT HOLLOWAY, PLAINTIFFS-APPELLANTS v. WACHOVIA BANK & TRUST COMPANY, N.A., AND JEAN DAWSON, DEFENDANTS-APPELLEES

No. 9114SC1271

(Filed 6 April 1993)

1. **Pleadings § 33.3 (NCI3d) — denial of motion to amend — no abuse of discretion**

    The trial court did not abuse its discretion in denying plaintiffs' motion to amend their complaint to assert claims for negligent hiring and gross negligence where the motion was filed four months after plaintiffs filed their complaint; plaintiffs provided no justifiable excuse for the delay in the motion; and allowance of the motion to amend would have transformed a relatively straightforward unfair debt collection case coupled with intentional tort claims into far more complex litigation requiring increased discovery and trial preparation.

    **Am Jur 2d, Pleading §§ 322, 324.**

2. **Pleadings § 33.3 (NCI3d) — denial of second motion to amend — previous dismissal — barred claims — delay**

    The trial court did not abuse its discretion in denying plaintiffs' second motion to amend their complaint on grounds that the motion seeks to reassert matters previously dismissed in this action by another judge, seeks to plead claims barred by the statute of limitations, and was unduly delayed.

    **Am Jur 2d, Pleading § 322; Limitation of Actions § 218.**

3. **Trespass § 2 (NCI3d) — intentional infliction of emotional distress — assault and battery — future harm**

    The trial court properly dismissed plaintiffs' claim for the intentional infliction of emotional distress arising from an alleged assault and battery where there was no allegation of any threat of future harm by defendants.

    **Am Jur 2d, Fright, Shock, and Mental Disturbance § 17.**

    **Recovery by debtor, under tort of intentional or reckless infliction of emotional distress, for damages resulting from debt collection method. 87 ALR2d 201.**

4. **Courts § 83 (NCI4th)— dismissal of claims—failure of another judge to reinstate**

The trial court did not err by refusing to reinstate plaintiffs' claims for the intentional infliction of emotional distress which had been dismissed by another judge since one superior court judge may not overrule a judgment previously made by another superior court judge in the same action.

5. **Consumer and Borrower Protection § 42 (NCI4th)— unfair debt collection acts—statutory protection of consumer—others not protected**

The legislative intent of the statutes prohibiting unfair debt collection acts, N.C.G.S. Ch. 75, Art. 2, is to protect the consumer, not bystanders or those who happen to accompany the consumer at the time of the alleged violation of the statutes. Therefore, the trial court properly dismissed N.C.G.S. § 75-51 claims of persons who accompanied the debtor at the time of the alleged unfair debt collection acts. N.C.G.S. § 75-50(1).

**Am Jur 2d, Consumer and Borrower Protection § 221.**

6. **Consumer and Borrower Protection § 44 (NCI4th)— unfair debt collection acts—damages**

The trial court properly limited plaintiff debtor's N.C.G.S. § 75-51 claim for unfair debt collection acts to $1,000 and properly struck the complaint's prayer for treble damages. N.C.G.S. § 75-56.

**Am Jur 2d, Consumer and Borrower Protection § 222.**

7. **Evidence and Witnesses § 1041 (NCI4th)— spoliation of evidence—admission by conduct—instruction not required**

The trial court in an unfair debt collection case did not err by failing to instruct the jury on spoliation of evidence because the individual defendant failed to produce a pistol at trial in response to a subpoena *duces tecum* where defendants admitted at trial that a .22 caliber pistol was in the individual defendant's possession at the time of the incident in question, the pistol was described to the jury, and the individual defendant testified at trial that the pistol had been thrown away by her husband without her knowledge.

**Am Jur 2d, Evidence §§ 623 et seq.**

Admissibility, in civil action, of disposal of property as bearing on question of liability. 38 ALR3d 996.

8. Consumer and Borrower Protection § 44 (NCI4th) — unfair debt collection act — financial records excluded — limited damages

The trial court did not err in refusing to allow evidence of the financial records of defendant bank on the issue of damages where the only issue submitted to the jury was plaintiff's claim for an unfair debt collection act, the maximum award for that claim is $1,000, and punitive damages are not available.

Am Jur 2d, Consumer and Borrower Protection §§ 222, 223.

9. Assault and Battery § 2 (NCI4th) — claims by infant — assault evidence insufficient — battery evidence sufficient

The evidence was insufficient to support the infant plaintiff's claim for assault where the infant's mother testified that the infant was either asleep or too young to understand what was going on at the time of a confrontation and the evidence failed to show that the infant experienced any apprehension of harmful or offensive contact. However, the infant plaintiff's evidence was sufficient for submission to the jury on his claim for battery where the infant's mother testified that she was holding the infant while sitting in the driver's seat of an automobile which the individual defendant attempted to repossess, and that such defendant had her elbow in the infant's back as she reached to take the key from the ignition and tried to pull the mother's hands off the key.

Am Jur 2d, Assault and Battery §§ 198 et seq.

10. Assault and Battery § 2 (NCI4th) — pointing gun at another — transferred intent — assault of plaintiff

The ten-year-old plaintiff's evidence was sufficient to support her claim for assault under the concept of transferred intent where her evidence tended to show that she was sitting in the back seat of an automobile when defendant bank employee pointed a gun at the driver while attempting to repossess the vehicle and that she was afraid of being shot by defendant.

Am Jur 2d, Assault and Battery §§ 198 et seq.

HOLLOWAY v. WACHOVIA BANK AND TR. CO.

[109 N.C. App. 403 (1993)]

11. **Damages §§ 104, 138 (NCI4th)— punitive damages—absence of request in prayer for relief—minor victims**

The minor plaintiffs' failure to specifically request punitive damages in their prayer for relief in an assault and battery complaint arising from defendant bank employee's attempt to repossess a car did not preclude the jury's consideration of punitive damages where the conduct alleged and proved at trial was outrageous, and where plaintiffs' prayer for "treble damages," albeit erroneous, put defendants on notice that plaintiffs were demanding more than compensatory damages. Moreover, plaintiffs were entitled to an instruction on punitive damages because the complaint alleged defendants' assault with a dangerous weapon and battery upon minors who had nothing to do with the underlying debt leading to the repossession.

**Am Jur 2d, Damages §§ 994, 995.**

12. **Appeal and Error § 505 (NCI4th)— error cured by verdict**

Any error by the trial court in the admission and exclusion of evidence and instructions relating to the liability issue in an unfair debt collection action was harmless where plaintiff prevailed on the liability issue.

**Am Jur 2d, Appeal and Error § 805.**

Judge LEWIS dissenting.

Appeal by plaintiffs from judgment entered 17 June 1991 by Judge Henry V. Barnette, Jr., in Durham County Superior Court. Heard in the Court of Appeals 2 December 1992.

In April 1985, plaintiff Hallie Holloway purchased a car financed by defendant Wachovia Bank & Trust Co., N.A. (hereinafter "Wachovia"). She defaulted on the loan. On 21 May 1986, defendant Jean Dawson, an employee of defendant Wachovia, attempted to repossess the car in the parking lot outside of a Durham laundromat. At the laundromat with Hallie Holloway were: 1) Sue Holloway, who is Hallie Holloway's mother; 2) Swanzett Holloway, who is Hallie Holloway's 10 year old niece; and 3) Damien Holloway, who is Hallie Holloway's 4 month old son. Plaintiffs left the scene driving the car defendant Dawson sought to repossess.

In their 27 April 1988 complaint, plaintiffs alleged that defendant Dawson aimed a gun at them in her attempt to repossess

the car. Each plaintiff sought recovery for assault, for intentional infliction of emotional distress, and for violations of G.S. 75-51 and G.S. 75-56 (hereinafter "G.S. Chapter 75 claims"). Additionally, plaintiffs Hallie Holloway and Damien Holloway sought recovery for battery arising from defendant Dawson's touching them while "reach[ing] through the window of the car" to take the car keys from the ignition.

Defendants filed separate answers. On 1 July 1988, defendant Wachovia filed an answer with a counterclaim against Hallie for the amount owed on the underlying debt ($1,933.74), interest, and attorney's fees. Defendant Wachovia denied that "at the time of the alleged incident complained of the Defendant Dawson was acting as an agent of Wachovia." In her 13 July 1988 answer, defendant Dawson denied plaintiffs' allegations and pleaded *inter alia* self-defense.

On 12 September 1988, Judge Anthony Brannon entered a default judgment against plaintiff Hallie Holloway as to defendant Wachovia's counterclaim. On 27 December 1988, Judge Brannon entered an amended default judgment against plaintiff Hallie Holloway for $1,933.74, interest, and attorney's fees.

On 25 August 1988, plaintiffs moved to amend their complaint to add a claim of negligent hiring and a claim of gross negligence with a prayer for punitive damages. On 19 January 1989, Judge Robert F. Farmer denied plaintiffs' 25 August 1988 motion to amend.

On 22 August 1989, Judge Samuel T. Currin issued an order (1) dismissing with prejudice plaintiffs' claims for the intentional infliction of emotional distress; (2) dismissing with prejudice the assault claims of Hallie Holloway and Sue Holloway; (3) dismissing with prejudice Hallie Holloway's battery claim; (4) dismissing with prejudice the G.S. Chapter 75 claims of Sue Holloway, Swanzett Holloway, and Damien Holloway; (5) limiting any potential recovery by Hallie Holloway under her G.S. Chapter 75 claim to $1000, and; (6) barring treble damages and striking that part of the complaint's prayer for relief.

On 15 December 1989, plaintiffs filed another motion to amend their complaint. On 19 January 1990, Judge Henry W. Hight, Jr., denied this motion because it sought "to reassert matters previously dismissed in this action and to plead claims which are barred by the applicable Statute of Limitations" and because it was "un-

**HOLLOWAY v. WACHOVIA BANK AND TR. CO.**

[109 N.C. App. 403 (1993)]

duly delayed and to allow it at this time would be unfairly prejudicial to the Defendants."

Thereafter, in regard to their previously dismissed intentional infliction of emotional distress claims, on 5 February 1991 plaintiffs filed a "motion for relief from summary judgment order with respect to the plaintiff's [sic] claim for reinstatement" pursuant to G.S. 1A-1, Rule 56 and G.S. 1A-1, Rule 60. On 14 February 1991, Judge J. Milton Read, Jr., denied the motion.

At trial, directed verdicts in favor of defendants were entered on Damien Holloway's battery claim and both Swanzett Holloway's and Damien Holloway's assault claims. As to plaintiff Hallie Holloway's G.S. Chapter 75 claim, the jury found that (1) defendant Jean Dawson had "commit[ted] an unfair act of debt collection" and (2) Hallie Holloway was entitled to recover $1,000.00. On 17 June 1991, Judge Henry V. Barnette, Jr. entered a judgment awarding Hallie Holloway a total of $1,000.00 on her G.S. Chapter 75 claim. However, this amount was "offset against the Defendants' [27 December 1988 Amended Default] Judgment on the [1 July 1988] counterclaim herein against Hallie Holloway in the amount of $1,933.75 together with interest and attorney's fees so that the Plaintiff Hallie Holloway shall recover nothing of the Defendants and the Defendants [sic] [27 December 1988 Amended] Default Judgment shall be reduced by $1,000.00 as of the date of this Judgment." Plaintiffs appeal.

*Michaux and Michaux, P.A., by Eric C. Michaux, for plaintiff-appellants.*

*Poe, Hoof & Reinhardt, by J. Bruce Hoof, for defendant-appellee Wachovia Bank & Trust Company, N.A.*

*Poe, Hoof & Reinhardt, by James T. Bryan, III, for defendant-appellee Jean Dawson.*

EAGLES, Judge.

Plaintiffs bring forward fifteen assignments of error. We affirm in part and reverse in part.

I.

In their first and sixth assignments of error, plaintiffs contend that the trial court erred by denying their motions to amend pursuant to G.S. 1A-1, Rule 15(a). We disagree.

**HOLLOWAY v. WACHOVIA BANK AND TR. CO.**

[109 N.C. App. 403 (1993)]

A.

[1] Plaintiffs filed their original complaint on 27 April 1988. On 25 August 1988, nearly four months later, plaintiffs filed their first motion to amend. In this motion, they sought to assert (1) a claim for negligent hiring with a prayer "for judgment in excess of $10,000 against the Defendants for their damages," and (2) a claim for gross negligence with a prayer "for judgment against the Defendant for punitive damages in excess of $10,000."

In *Chicopee, Inc. v. Sims Metal Works*, 98 N.C. App. 423, 430, 391 S.E.2d 211, 216, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 674, *reconsid. denied*, 327 N.C. 632, 397 S.E.2d 76 (1990), this Court stated:

> Amendment of pleadings after a response has been served is only by "leave of court . . . and leave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A-1, Rule 15(a). A motion for leave to amend is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of abuse of discretion. *Martin v. Hare*, 78 N.C. App. 358, 360-1, 337 S.E.2d 632, 634 (1985). Although a trial court is not required to state specific reasons for denial of a motion to amend, *see id.* at 361, 337 S.E.2d at 634, reasons that would justify a denial are "(a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Id.*

(Alteration in original.)

In its 19 January 1989 order, the trial court did not state its specific reasons for denying plaintiffs' motion to amend. "When the trial court fails to state specific reasons for denial of a motion to amend or when the trial court states inconsistent and incomplete reasons, this Court *may* nonetheless examine any apparent reasons for such denial." *Chicopee*, 98 N.C. App. at 431, 391 S.E.2d at 216 (emphasis in original). From our review of the record, there are several apparent reasons for the trial court's denial of plaintiffs' motion. The motion was filed nearly four months after plaintiffs filed their complaint (and more than two years after the incident at issue), and plaintiffs provided no justifiable excuse for the delay in the motion, in their subsequent answers to interrogatories, or at the hearing itself. *See Caldwell's Well Drilling, Inc. v. Moore*,

79 N.C. App. 730, 340 S.E.2d 518 (1986). Furthermore, plaintiffs' original complaint only sought recovery for: 1) a violation of G.S. Chapter 75 and; 2) the intentional torts of assault, battery, and the intentional infliction of emotional distress. Allowance of this motion to amend would have transformed a relatively straightforward unfair debt collection case coupled with intentional tort claims into far more complex litigation based on newly pleaded negligent hiring and gross negligence theories, requiring greatly increased discovery and trial preparation. On this record, plaintiffs have failed to make "a clear showing of abuse of discretion," *Chicopee*, 98 N.C. App. 430, 391 S.E.2d at 216, by the trial court. Accordingly, plaintiffs' first assignment of error is overruled.

### B.

[2]  In their sixth assignment of error, plaintiffs contend that the trial court erred in denying plaintiffs' second motion to amend filed 15 December 1989. There, plaintiffs alleged a seventh claim for relief that defendants had violated eight different statutes, including five criminal statutes, with each "constitut[ing] a separate and distinct negligent act on the part of the defendants." Furthermore, plaintiffs alleged that these acts "placed the plaintiffs in fear of great bodily harm caused [sic] them mental suffering and anguish." The motion also included an eighth claim for relief alleging that "the acts of the Defendants were grossly negligent and done with heedless disregard of the legal rights of the Plaintiffs or others. Further that such acts of negligence were willful, [sic] wanton amounting to gross negligence and thereby entitling the plaintiffs to exemplary or punitive damages."

In his order, Judge Henry W. Hight, Jr., listed the following reasons for his denial of plaintiffs' second motion to amend:

3. On August 24, 1988 the Plaintiffs filed a Motion to Amend their Complaint attempting to allege a theory of negligence;

4. This motion was denied by the Order of the Honorable Robert F. Farmer, Superior Court Judge, entered herein on January 19, 1989;

5. On December 27, 1988 a Default Judgment was entered in this action by the Honorable Anthony Brannon, Superior Court Judge, in favor of the Defendant Wachovia on its

Counterclaim against the Plaintiff Hallie Holloway in the amount of $1,933.74 together with interest and costs.

6. On April 12, 1989 the plaintiffs filed a new and separate lawsuit entitled Holloway v. Wachovia, et al., 89 CVS 01356 which Complaint purported to allege negligence theories in addition to the theories asserted in their Complaint filed herein and relating to the same alleged incident as is the subject of this action;

7. The second lawsuit (89 CVS 01356) was dismissed by the Order of the Honorable I. Beverly Lake, Jr., Superior Court Judge, entered in that action on July 11, 1989;

8. This action was first called for trial at the July 24, 1989 term of Durham County Civil Superior Court. This action was not reached for trial at that term but was heard by the Honorable Samuel T. Currin, Superior Court Judge, upon the Defendants' Motion to Dismiss. These Motions were allowed and pursuant to Judge Currin's Order on those Motions entered herein on August 21, 1989 the causes of action of the Plaintiffs Hallie Holloway and Sue Holloway alleging assault; the cause of action of the Plaintiff Hallie Holloway alleging battery; the causes of action of all the Plaintiffs alleging intentional infliction of emotional distress and the causes of action of all of the Plaintiffs except the Plaintiff Hallie Holloway alleging violation of N.C.G.S. Secs. 75-51 and 75-56, were dismissed. In addition, Judge Currin's Order limited any recovery by the Plaintiff Hallie Holloway pursuant to her claim under G.S. Secs. 75-51 and 75-56 to the sum of $1,000.00 which is less than the amount of the Judgment and off-set previously entered [on 27 December 1988] against said Plaintiff herein on the [1 July 1988] Counterclaim. Under the Orders of Judge Currin and Judge Brannon entered herein, therefore, the Plaintiff Hallie Holloway is arithmetically precluded from a recovery in this action. Judge Currin's Order left for trial only the claims of the Plaintiffs Swanzett and Damien Holloway alleging assault and the claim of the Plaintiff Damien Holloway alleging a battery; and

9. This action was next set for trial at the December 4, 1989 term of Durham County Civil Superior Court at which term it was scheduled as the first case for trial. The case was not tried at that term upon the Motion of the Plaintiffs.

HOLLOWAY v. WACHOVIA BANK AND TR. CO.

[109 N.C. App. 403 (1993)]

The Court therefore rules that the Plaintiffs' Second Motion to Amend their Complaint in this cause which Motion was filed on or about December 13, 1989 and which came on for hearing on January 16, 1990 be and the same hereby is denied because:

1. The Court finds that said Motion seeks to reassert matters previously dismissed in this action and to plead claims which are barred by the applicable Statute of Limitations and therefore said Motion is denied based upon the futility of said proposed amendment; and

2. The Court also finds as an independent and separate ground for denying Plaintiffs' Motion that said Motion is unduly delayed and to allow it at this time would be unfairly prejudicial to the Defendants.

Again, plaintiffs have failed to present a clear showing of an abuse of discretion. Additionally, as this motion contained matters previously dismissed in a prior order decided by a different trial court judge, we note that the trial court exercised proper deference towards that initial ruling. *See Calloway v. Motor Co.*, 281 N.C. 496, 505, 189 S.E.2d 484, 490 (1972) ("when one Superior Court judge, in the exercise of his discretion, has made an order denying a motion to amend, absent changed conditions, another Superior Court judge may not thereafter allow the motion."). Accordingly, plaintiffs' sixth assignment of error is overruled.

II.

In their second and seventh assignments of error, plaintiffs contend that the trial court erred (1) by dismissing plaintiffs' intentional infliction of emotional distress claims, and; (2) by failing to reinstate these claims. We disagree.

[3]    Our Supreme Court has provided that when one seeks to recover damages for the intentional infliction of emotional distress arising from an incident in which the defendant is alleged to have committed the acts of assault and battery, the plaintiff must show that there was a *threat of future harm. Dickens v. Puryear*, 302 N.C. 437, 454-55 & n.11, 276 S.E.2d 325, 336 (1981). Plaintiffs' complaint did not allege that there was any threat of future harm by defendants. There is no evidence in this record that any threat of future harm was made. Both Hallie Holloway and Sue Holloway testified

**HOLLOWAY v. WACHOVIA BANK AND TR. CO.**

[109 N.C. App. 403 (1993)]

in their depositions that no threat of future harm was made. Accordingly, plaintiffs' second assignment of error fails.

[4] Plaintiffs also contend that the trial court erred "when it failed to grant plaintiffs' motion for reinstatement of [the intentional infliction of emotional distress] claims and for appropriate relief under [G.S. 1A-1,] Rule 60 and [G.S. 1A-1, Rule] 56 of the North Carolina Rules of Civil Procedure." One superior court judge may not overrule a judgment previously made by another superior court judge in the same action. *Calloway*, 281 N.C. at 501, 189 S.E.2d at 488. Further, we have closely examined plaintiffs' argument and conclude that this assignment of error has no merit.

### III.

[5] In their third assignment of error, plaintiffs claim that the trial court erred by dismissing the G.S. Chapter 75 claims of Sue Holloway, Swanzett Holloway, and Damien Holloway. We disagree.

G.S. 75-50(1) defines a "consumer" as "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes." As this definition indicates, the legislative intent of the statute is to protect the consumer, not bystanders or those who happen to accompany the consumer at the time of an alleged G.S. Chapter 75, Article 2 violation. Accordingly, the trial court correctly dismissed these claims. *Cf. Fisher v. Eastern Air Lines, Inc.*, 517 F. Supp. 672 (M.D.N.C. 1981).

### IV.

[6] In their fourth and fifth assignments of error, plaintiffs contend that the trial court erred by limiting the G.S. Chapter 75 claim of Hallie Holloway to $1,000.00 and by striking the complaint's prayer for treble damages. We find no error.

G.S. 75-56 provides that:

> The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article. Notwithstanding the provisions of G.S. 75-15.2 and 75-16, in private actions . . . *civil penalties in excess of one thousand dollars ($1,000) shall not be imposed, nor shall damages be trebled* for any violation under this Article.

(Emphasis added.) Accordingly, this assignment of error fails.

### V.

[7]  In their eighth assignment of error, plaintiffs argue that "the trial court committed reversible error in failing to give appropriate instructions on the issue of spoilation of evidence" because defendant Dawson failed to present the gun at trial despite the trial court's issuance of a subpoena *duces tecum*. We disagree.

At trial, defendants admitted that "a .22 caliber Astro pistol" was in defendant Dawson's possession at the time of the incident and the gun was described to the jury. Plaintiffs' counsel asked defendant Dawson whether or not she had fully complied with the subpoena *duces tecum*. Defendant Dawson admitted that she had received the subpoena and that she (Dawson) had not complied with the subpoena. Thereafter, Dawson testified that the gun had been inadvertently thrown away by defendant Dawson's husband unbeknownst to defendant Dawson. This assignment of error fails.

### VI.

[8]  In their ninth assignment of error, plaintiffs argue that "the trial court committed reversible error when it refused to allow evidence of the financial records of Wachovia Bank and Trust Company on the issues of damages." We disagree.

The only issue that went to the jury was plaintiff Hallie Holloway's G.S. Chapter 75 claim. As discussed *supra*, the maximum award for that claim is $1,000.00 and punitive damages are not available. Accordingly, this assignment of error fails.

### VII.

[9]  In their tenth assignment of error, plaintiffs argue that the trial court erred by granting defendants' motions for directed verdict. As to Damien Holloway's assault claim, we affirm. As to Damien Holloway's battery claim and Swanzett Holloway's assault claim, we reverse and remand for a new trial on these two claims only.

### A.

Regarding the tort of assault, this Court has stated:

The interest protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person. *McCracken v. Sloan*, 40 N.C. App. 214, 216, 252 S.E.2d 250, 252 (1979). In *Dickens v. Puryear*, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981), our Supreme Court stated assault re-

quires the plaintiff's reasonable apprehension of an immediate harmful or offensive contact. The *Dickens* Court further quoted the Comment to Section 29(1) of Restatement (Second) of Torts (1965): "[T]he apprehension created must be one of imminent contact, as distinguished from any contact in the future. Imminent does not mean immediate, in the sense of instantaneous contact . . . it means rather that there will be no significant delay." 302 N.C. at 445-46, 276 S.E.2d at 331.

*Johnson v. Bollinger*, 86 N.C. App. 1, 5, 356 S.E.2d 378, 381 (1987). At trial, plaintiff Hallie Holloway answered "yes" to the question "throughout this he [Damien Holloway] was either asleep or too young to understand what was going on throughout this confrontation; isn't that correct?" Plaintiffs have failed to show that the infant Damien experienced any apprehension of harmful or offensive contact. Accordingly, we find no merit in plaintiffs' argument. *See McCraney v. Flanagan*, 47 N.C. App. 498, 267 S.E.2d 404 (1980); Restatement (Second) of Torts § 22 (1965).

## B.

However, there was sufficient evidence to permit a jury to consider the infant Damien Holloway's battery claim. "The elements of battery are intent, harmful or offensive contact, causation, and lack of privilege. 1 Haynes [North Carolina Tort Law] § 4-2 [(1989) (hereinafter "Haynes")]. As with assault, a showing of actual damage is not an essential element of battery. 1 Haynes § 4-5." *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992).

Hallie Holloway testified that while she was sitting in the driver's seat of the automobile, she had the infant Damien "up on my chest." She further testified that as defendant Dawson reached to take the keys from the ignition on the right hand side of the steering wheel, defendant Dawson "had her elbow in my baby's back. She, was trying to pull my hands off the key."

Defendants argue that the trial court "allowed a directed verdict on Damien Holloway's battery claim because there was clearly no intent to touch Damien. Rather his touching was inadvertent, incidental, and unintentional." However, "[t]he gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff." *McCracken*, 40 N.C. App. at 216-17, 252 S.E.2d at 252. *See N.C.*

*Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 707, 412 S.E.2d 318, 324 (1992) (" '[t]he intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids.' Prosser, [Law of Torts] § 8, p.36 [(5th ed. 1984) (hereinafter "Prosser")].");  *see also Dickens*, 302 N.C. 437, 276 S.E.2d 325; Prosser, § 10. Based upon the record before us, the issue of whether the infant Damien was entitled to recover upon a claim of battery should have been submitted to the jury.

### C.

[10] Next, we address Swanzett Holloway's assault claim. "An assault is an offer to show violence to another without striking him." *Dickens*, 302 N.C. at 444, 276 S.E.2d at 330. "The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury. 1 Haynes § 3-3. Plaintiff establishes a cause of action for assault upon proof of these technical elements without proof of actual damage. 1 Haynes § 3-5." *Hawkins*, 101 N.C. App. at 533, 400 S.E.2d at 475.

At the time that Jean Dawson had the gun in her hand, Swanzett Holloway was sitting in the back seat of the automobile. At trial, Swanzett Holloway gave the following testimony:

Q [Plaintiffs' counsel]: Did you see the gun?

A [Swanzett Holloway]: Yes.

Q: And how did you see the gun?

A: It was in her [defendant Dawson's] hand.

Q: All right. And where did she have—where was she when you saw her with the gun?

A: She was outside the car on the driver's side.

Q: On the driver's side. Where did she have it pointed?

A: Toward Hallie [Holloway] and her baby [Damien Holloway].

. . . .

Q: Now, but for Hallie would the gun have been pointed at you the way you described it on here?

## HOLLOWAY v. WACHOVIA BANK AND TR. CO.

[109 N.C. App. 403 (1993)]

A: Yes.

Mr. Hoof [defendants' counsel]: Objection to leading.

Court: Sustained.

Q: Could you see the barrel of the gun?

A: Yes, I saw the gun, black and brown.

Q: . . . What did you think or what did you feel when you saw the gun?

A: I was scared.

Q: What were you afraid of?

A: She could have shot either one of us.

Q: . . . Were you afraid of being shot?

A: Yes.

Since Swanzett Holloway testified that the gun was not pointed directly at her, she relies on the concept of transferred intent to recover on this assault claim. The Restatement (Second) of Torts explains the concept of transferred intent as follows: "If an act is done with the intention of affecting a third person . . . but puts another in apprehension of a harmful or offensive contact, the actor is subject to liability to such other as fully as though he intended so to affect him." *Id.* § 32(2). *See generally*, Prosser, § 8, pp. 37-39; Daye and Morris, North Carolina Law of Torts § 2.31.2, pp. 8-10 (1991) (hereinafter "Daye and Morris").

Our research indicates that the concept of transferred intent has not been applied in a civil case in North Carolina. However, at least four criminal cases have tacitly recognized transferred intent principles. *See State v. Cates*, 293 N.C. 462, 238 S.E.2d 465 (1977); *State v. Wynn*, 278 N.C. 513, 180 S.E.2d 135 (1971); *see also State v. Locklear*, 331 N.C. 239, 415 S.E.2d 726 (1992); *State v. Correll*, 38 N.C. App. 451, 248 S.E.2d 451, *disc. review denied*, 296 N.C. 107, 249 S.E.2d 805 (1978); *see generally* Daye and Morris, § 2.31.2, pp. 8-9 (stating three reasons why transferred intent should be applied in tort actions: "First, in the intentional torts area, North Carolina law tends to be consistent with the general rules of American jurisprudence. Second, North Carolina courts have applied transferred intent concepts in criminal cases. Third, the use of the concept of transferred intent in civil cases

was originally adapted from the criminal law. As has been shown, courts have applied criminal concepts of intent to analyze civil liability.").

"North Carolina follows common law principles governing assault and battery. . . . Common law principles of assault and battery as enunciated in North Carolina law are also found in the Restatement (Second) of Torts (1965)." *Dickens*, 302 N.C. at 444-45, 276 S.E.2d at 330-31. Prosser notes that the concept of transferred intent existed at common law, first appearing

> in criminal cases at a time when tort and crime were still merged in the old trespass form of action. It represents an established rule of the criminal law, in cases in which shooting, striking, throwing a missile or poisoning has resulted in unexpected injury to the wrong person. The criminal cases have been understandably preoccupied with moral guilt, and the obvious fact that if the defendant is not convicted there is no one to hold liable for the crime. *But the same rule was applied to tort cases arising in trespass* [which "was the progenitor not only of battery, but also of assault and false imprisonment"]. This may possibly have been due to a considered feeling that the defendant could not sustain a burden of proof of freedom from fault when the defendant had at least intended to injure another person. But a better explanation may lie in nothing more than the mere proximity of the criminal law to the trespass action, with its criminal tradition and the similarity of the fact situations. It is quite probable, however, that the persistence of the principle has been due to a definite feeling that the defendant is at fault, and should make good the damage. The defendant's act is characterized as "wrongful," and the fault is regarded as absolute toward all the world, rather than relative to any one person. Having departed from the social standard of conduct, the defendant is liable for the harm which follows from the act, although this harm was not intended.

Prosser, § 8, pp. 37-38 (emphasis added) (footnotes omitted). Since the concept of transferred intent was recognized at common law, we hold that on the facts presented in this case, the issue of whether Swanzett Holloway was entitled to recover for a claim of assault should have been submitted to the jury.

## HOLLOWAY v. WACHOVIA BANK AND TR. CO.

[109 N.C. App. 403 (1993)]

## VIII.

In their eleventh assignment of error, plaintiffs argue that the trial court erred by not submitting the issues of punitive damages to the jury. As to Hallie Holloway's G.S. Chapter 75 claim, we disagree and find no error. However, as to Damien Holloway's battery claim and Swanzett Holloway's assault claim, upon remand the jury should not be precluded from considering the issue of punitive damages.

### A.

The only issue that the jury considered was Hallie Holloway's G.S. Chapter 75 claim. Since punitive damages are not among the exclusive remedies listed in G.S. 75-56, this assignment of error has no merit as to Hallie Holloway's claim.

### B.

[11] As discussed *supra*, the trial court committed reversible error by entering directed verdicts against Damien Holloway's battery claim and Swanzett Holloway's assault claim. Defendants argue that plaintiffs' failure to specifically request punitive damages by name in their prayer for relief bars any potential entitlement of the minor plaintiffs to punitive damages at trial. We disagree.

"Under the 'notice theory' of pleading contemplated by Rule 8(a)(1) of the Rules of Civil Procedure, the complaint need no longer allege facts or elements showing aggravating circumstances which would justify an award of punitive damages." *Huff v. Chrismon*, 68 N.C. App. 525, 527, 315 S.E.2d 711, 712, *disc. review denied*, 311 N.C. 756, 321 S.E.2d 134 (1984). Furthermore,

"[b]y enactment of G.S. 1A-1, the legislature adopted the 'notice theory of pleading.' " *Roberts v. Memorial Park*, 281 N.C. 48, 56, 187 S.E.2d 721, 725 (1972).

In our first case which considered the "notice pleading" theory of the new Rules of Civil Procedure, Justice Sharp (later Chief Justice) wrote:

A pleading complies with the rule if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and—by using the rules provided for obtaining pretrial

discovery — to get any additional information he may need to prepare for trial.

*Sutton v. Duke*, 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970). *Accord: Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979); *Brewer v. Harris*, 279 N.C. 288, 182 S.E.2d 345 (1971).

*Shugar v. Guill*, 304 N.C. 332, 337, 283 S.E.2d 507, 510 (1981) (wherein plaintiff alleged in his complaint that the defendant, "without just cause, did intentionally, willfully and maliciously assault and batter the plaintiff, inflicting upon him serious and permanent personal injuries.").

Here, the relevant portions of plaintiffs' complaint state:

2. That Damien Lee Holloway is the son of Hallie K. Holloway and is two (2) years of age.

3. That Swanzett Holloway is the daughter of Connie Thorpe and is twelve (12) years of age.

4. That Hallie K. Holloway has been appointed Guardian ad litem for minor Damien Lee Holloway.

5. That Connie Thorpe has been appointed Guardian ad litem for minor Swanzett Holloway.

. . . .

FIRST CLAIM FOR RELIEF

. . . .

10. That on or about 21 May 1986 at approximately 1:00 p.m., at New Way Laundry & Dry Cleaners, Main Street in Roxboro, North Carolina, defendant employer by and through said defendant employee did *violently, willfully, and intentionally* assault the plaintiffs by displaying and *aiming a firearm* at the plaintiffs intending by such act to put plaintiffs in apprehension of an immediate harmful contact, and plaintiffs as a direct result of such act, were put in such apprehension.

11. That the natural results of said intentional actions of the defendant's agent caused plaintiffs severe mental suffering and wounded feelings. They were rendered highly nervous, frightened and upset and were forced to flee the area of the danger in a hasty manner further frightening endangering [sic] them. The conduct of the defendant's agent frightened the

HOLLOWAY v. WACHOVIA BANK AND TR. CO.

[109 N.C. App. 403 (1993)]

plaintiffs so that they were in a state of fear and apprehension so great they were afraid to leave the confines of their homes for several days for fear of being accosted and harassed by defendant's agent again.

## SECOND CLAIM FOR RELIEF

12. The allegations contained in paragraphs 1-11 of this Complaint are incorporated herein and pled as if fully set forth.

13. That immediately following the acts complained of in the claim for relief, the defendant's agent reached through the window of the car in which the plaintiffs Hallie K. Holloway and Damien Lee Holloway were sitting, battering them by pressing her elbow, forearm and then upper arm against Hallie K. Holloway's neck, chest, and facial area in a forceful, aggressive and intentional manner, resulting in a harmful and offensive touching; and against the arm, leg and head of plaintiff Damien Lee Holloway in a *forceful, aggressive and intentional* manner, resulting in a harmful and offensive touching causing him to cry.

14. By reason thereof, plaintiffs Hallie K. Holloway and Damien Lee Holloway suffered severe emotional trauma accompanied by uncontrollable nervous tremors and crying.

. . . .

WHEREFORE, Plaintiffs pray the Court as follows:

1. That a judgment be entered in favor of each individual plaintiff against the defendant.

2. That each judgment amount assessed be increased by *treble* the amount fixed.

(Emphasis added.) We note initially that plaintiffs' complaint included a prayer, albeit erroneous, for treble damages. This prayer for treble damages was clearly sufficient to put defendants on notice that plaintiffs were demanding more than compensatory damages and to allow defendants to prepare for trial accordingly. In sum, we decline to hold that the words "punitive damages" must appear in a complaint's prayer for relief where the conduct alleged and *proved* at trial is outrageous. Furthermore, we do not believe that parties' rights to punitive damages should be waived by mere technical pleading errors, such as stating "treble

HOLLOWAY v. WACHOVIA BANK AND TR. CO.

[109 N.C. App. 403 (1993)]

damages" instead of "punitive damages," where defendants are given sufficient notice of the events that could support a jury award of punitive damages.

Furthermore, plaintiffs were entitled to, and defendants could reasonably expect, an instruction on punitive damages because the complaint alleged *inter alia* defendants' assault with a dangerous weapon and battery upon *minors* who had nothing to do with the underlying debt leading to the repossession. "Obviously, the *age*, sex, relationship of the parties, or *the type of weapon used* may be important in determining if the assault was of such a nature as to warrant an allowance of punitive damages. Where the plaintiff is a woman, a feeble or infirm person, *a child*, or a disabled person, these factors will be taken into consideration by the jury in determining punitive damages." 1 Haynes, § 3-5, p.70 (emphasis added); 1 Haynes, § 4-5 (battery).

> Finally, we note that our Supreme Court has stated:
>
> It is well established in this jurisdiction that punitive damages may be recovered for an assault and battery but are allowable *only* when the assault and battery is accompanied by an element of aggravation such as malice, or oppression, or gross and willful wrong, or a wanton and reckless disregard of plaintiff's rights.
>
> . . . .
>
> To justify the awarding of punitive damages in North Carolina, there must be a showing of *actual* or *express* malice, that is, a showing of a sense of personal ill will toward the plaintiff which activated or incited a defendant to commit the alleged assault and battery.

*Shugar*, 304 N.C. at 335, 338, 283 S.E.2d at 509, 511. Plaintiffs must make this showing to receive a punitive damage instruction upon remand.

IX.

[12]   In their last four assignments of error, plaintiffs argue that the trial court committed reversible error by the following: (1) admitting character evidence by allowing defendant Dawson to testify that a car salesman told her [Dawson] that Hallie Holloway was "unstable," that the Holloway family was "dangerous," and to be wary of the Holloway family in dealing with them; (2) excluding

**HOLLOWAY v. WACHOVIA BANK AND TR. CO.**

[109 N.C. App. 403 (1993)]

evidence that Jean Dawson was fired by Wachovia because of the acts committed against plaintiffs; (3) instructing the jury "that Jean Dawson as Wachovia's agent could repossess the plaintiff Hallie Holloway's automobile without a court order unless a reasonable person in her position would have reasonably anticipated that to continue the effort to repossess would have created a hostile confrontation," and; (4) instructing the jury that "if the use of the pistol by Jean Dawson as you find that she used it was entirely for the purpose—for a purpose other than repossession such as self-protection then this would not be an unfair debt collection act." We have carefully reviewed these assignments of error.

Plaintiff Hallie Holloway prevailed on the liability issue of her G.S. Chapter 75 claim. If, assuming *arguendo*, there was any error as to any of these assignments, the error was harmless because Hallie Holloway prevailed on the liability issue. G.S. 1A-1, Rule 61. Accordingly, these assignments of error are overruled.

### X.

In conclusion, we reverse and remand as to the trial court's rulings dismissing Damien Holloway's battery claim and Swanzett Holloway's assault claim. On remand, if the jury finds the existence of one or both of these claims, the jury should also have the opportunity to consider the issue of punitive damages. In all other respects the judgments are affirmed.

Affirmed in part; reversed in part and remanded.

Judge WELLS concurs.

Judge LEWIS concurs in part and dissents in part.

Judge LEWIS dissenting.

I respectfully dissent from Part VIII of the majority opinion, which allows Damien Holloway and Swanzette Holloway to go forward on the issue of punitive damages as to Damien Holloway's battery claim and Swanzette Holloway's assault claim. In their Prayer for Relief, plaintiffs requested judgment in their favor and "[t]hat each judgment amount assessed be increased by treble the amount fixed." Never did plaintiffs indicate they were seeking punitive damages anywhere in their Complaint or Prayer for Relief. Under the "notice theory" of pleading, I believe plaintiffs should

specifically request punitive damages to put defendants on notice of the possibility of unlimited damages.

The majority cites *Huff v. Chrismon*, 68 N.C. App. 525, 315 S.E.2d 711, *disc. rev. denied*, 311 N.C. 756, 321 S.E.2d 134 (1984), for the position that under notice pleading it is no longer necessary to allege the specific aggravating circumstances giving rise to a claim for punitive damages. However, in that case the plaintiffs specifically requested punitive damages in their complaint, thus leaving no question that defendants were on notice plaintiffs were seeking punitive damages. *Id.* at 528, 315 S.E.2d at 713. In *Holley v. Hercules, Inc.*, 86 N.C. App. 624, 359 S.E.2d 47 (1987), this Court stated that "our courts have usually not required the pleader to specifically plead, by name, punitive damages; they have rather held that it is enough that the facts tending to establish the aggravated character of the wrong are alleged . . . ." 86 N.C. App. at 627, 359 S.E.2d at 49. On the other hand, in *Warren v. Colombo*, 93 N.C. App. 92, 377 S.E.2d 249 (1989), another panel of this Court stated that under the notice theory of pleading, plaintiff "need not allege circumstances justifying recovery of punitive damages." 93 N.C. App. at 102, 377 S.E.2d at 255. The Court, however, found plaintiff's allegations insufficient even under notice pleading standards. The allegation of willful and wanton conduct was "buried among negligence allegations," and plaintiff did not request punitive damages against that defendant in any claim or prayer for relief. *Id.*

The law is less than clear on the requisites for properly pleading punitive damages under notice pleading standards. From the cases mentioned it appears that punitive damages must be mentioned by name in the complaint, or the language of the complaint must clearly set forth the aggravating factors entitling plaintiffs to punitive damages. The majority relied on the latter method in allowing the claim for punitive damages to go forward.

I would hold that plaintiffs must specifically claim punitive damages in their complaint or prayer for relief in order to put defendants on notice of the possibility of unlimited damages. In this case, plaintiffs' request for treble damages was consistent with their Chapter 75 claim for unfair and deceptive trade practices. A request for treble damages is for a specific and limited amount, whereas a request for punitive damages is for an unlimited amount of damages. Defendants would certainly prepare for trial much differently if they knew they were potentially subject to punitive

CENTURY DATA SYSTEMS v. McDONALD

[109 N.C. App. 425 (1993)]

damages. Moreover, there is no authority for the proposition that pointing a gun at someone automatically gives rise to a claim for punitive damages where there is no alleged injury, either physical or emotional. Punitive damages should not be sprung on unsuspecting defendants at the instruction conference. They should be clearly pled without "hidden" notice.

For this reason, I respectfully dissent as to Part VIII of the majority opinion; I concur with all other sections.