CHICOPEE, INC., PLAINTIFF-APPELLANT v. SIMS METAL WORKS, INC.,
AMERICAN TOOL AND MACHINE COMPANY AND COMMERCIAL
UNION INSURANCE COMPANY, DEFENDANTS-APPELLEES

No. 8911SC745

(Filed 15 May 1990)

1. **Limitation of Actions § 4.1 (NCI3d); Sales § 22 (NCI3d) — product liability — statute of repose — time of initial purchase for use**

    Where plaintiff textile manufacturer contracted for defendant machine company to manufacture and install two drying ranges containing forty pressure vessels each, and defendant machine company subcontracted with defendant metal working company to manufacture the eighty vessels, the "initial purchase for use" of the pressure vessels within the meaning of the six-year statute of repose of N.C.G.S. § 1-50(6) occurred when plaintiff purchased the drying ranges for the purpose of manufacturing textiles, not when defendant machine company purchased the vessels from the subcontractor for assembly into the drying ranges.

    **Am Jur 2d, Products Liability § 921.**

2. **Limitation of Actions § 4.1 (NCI3d); Sales § 22 (NCI3d) — product liability — statute of repose — proof by plaintiff**

    Plaintiff met its burden of proving that its action for negligent manufacture and inspection of pressure vessels was brought no more than "six years after the date of initial purchase for use" within the meaning of N.C.G.S. § 1-50(6) where plaintiff filed its complaint on 19 September 1986, and plaintiff's evidence showed that on 19 September 1980 component parts of two drying ranges, including the pressure vessels, were still being shipped to plaintiff's plant for assembly and installation.

    **Am Jur 2d, Products Liability § 921.**

3. **Rules of Civil Procedure § 15 (NCI3d) — denial of motion to amend complaint — inconsistent and incomplete reasons — apparent reasons — remand for reconsideration**

    Where the trial court stated inconsistent and incomplete reasons for the denial of plaintiff's motion to amend its complaint, the Court of Appeals could have examined any apparent

reasons for such denial. However, since the Court of Appeals reversed a directed verdict for defendants and remanded the case for trial on plaintiff's negligence claim, the trial court was directed on remand to reconsider plaintiff's motion to amend.

**Am Jur 2d, Pleadings §§ 306, 314.**

4. **Rules of Civil Procedure § 60 (NCI3d)— Rule 60 motion for relief from judgment—no substitute for appeal**

Erroneous judgments may be corrected only by appeal and not by a motion under N.C.G.S. § 1A-1, Rule 60.

**Am Jur 2d, Judgments §§ 671-674.**

5. **Damages § 6 (NCI3d); Sales § 22 (NCI3d)— product liability negligence action—damages—economic losses**

Purely economic losses cannot be recovered in a product liability negligence action. Therefore, in an action to recover for negligent manufacture and inspection of a pressure vessel which exploded, the trial court properly ruled that plaintiff's recoverable damages did not include economic or pecuniary losses such as the cost to replace other allegedly defective pressure vessels not damaged by the explosion.

**Am Jur 2d, Products Liability § 970.**

APPEAL by plaintiff Chicopee, Inc. from judgment and order entered 8 February 1989 by *Judge Howard E. Manning, Jr.* in JOHNSTON County Superior Court, and from orders entered 19 May 1988 by *Judge Coy E. Brewer, Jr.* in JOHNSTON County Superior Court. Heard in the Court of Appeals 17 January 1990.

Plaintiff's evidence presented at trial tended to show the following: Plaintiff Chicopee, Inc. (Chicopee), is a textile manufacturer with a plant in Benson, North Carolina. In March 1980, plaintiff contracted with defendant American Tool and Machine Company (American Tool) to manufacture two drying ranges, each containing forty pressure vessels, and to install those drying ranges in Chicopee's Benson plant. The drying ranges are used in the manufacture of fiber products. Engineers employed by Chicopee prepared the specifications for the drying ranges, including specifications for the pressure vessels. Chicopee specified that the pressure vessels should be designed and manufactured to withstand working pressure

CHICOPEE, INC. v. SIMS METAL WORKS

[98 N.C. App. 423 (1990)]

at 150 pounds per square inch and should comply with standards set by the American Society of Mechanical Engineers (ASME) Boiler and Pressure Vessel Code.

American Tool subcontracted with defendant Sims Metal Works, Inc. (Sims) for the manufacture of the eighty vessels. Sims contracted with Commercial Union Insurance Company (Commercial Union) to inspect the pressure vessels for compliance with the ASME Code.

By 22 August 1980, Sims and Commercial Union had completed manufacture and inspection of the pressure vessels. The pressure vessels and other component parts of the two drying ranges arrived at Chicopee's plant in several shipments between August and November 1980. In accordance with the contract, American Tool assembled and installed the drying ranges at Chicopee's plant.

On 15 October 1983, one of the pressure vessels exploded, damaging fabric and chemicals used in the manufacturing process. Chicopee hired two engineering firms to examine the welds on the remaining pressure vessels. The engineers determined that approximately three-quarters of the pressure vessels had not been manufactured in accordance with the ASME Code. Chicopee replaced all the defective cans.

On 19 September 1986, Chicopee filed its complaint against defendants American Tool, Sims and Commercial Union alleging negligence in the design, manufacture and inspection of the pressure vessels and seeking damages for the equipment and materials damaged in the explosion as well as for the cost of inspecting and replacing the defective pressure vessels. On 1 February 1988, Chicopee filed a motion to amend its complaint to add additional claims and additional defendants. On that same date, defendants Sims and Commercial Union filed motions for partial summary judgment on the issue of damages, arguing that plaintiff's damages should be limited to actual property damage. On 19 May 1988, Judge Brewer denied plaintiff's motion to amend its complaint and granted defendants' motions for partial summary judgment. On 27 September 1988, plaintiff brought a motion under N.C. Gen. Stat. § 1A-1, Rule 60 seeking an order setting aside Judge Brewer's 19 May 1988 orders. Additional facts regarding these pre-trial motions and orders are set out in the opinion.

The case came on for trial on 30 January 1989. During plaintiff's case, Chicopee reached a settlement with defendant American Tool and voluntarily dismissed its claim against that defendant. At the close of plaintiff's evidence, defendants Sims and Commercial Union moved for and Judge Manning granted a directed verdict against Chicopee. Chicopee appeals from this judgment, as well as from Judge Manning's order on plaintiff's Rule 60 motion and Judge Brewer's orders denying plaintiff's motion to amend and granting defendants' motions for partial summary judgment on the issue of damages.

*Harlow, Reilly, Derr & Stark, by Jay R. Sloane and William L. London, for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, by Thomas J. White, III and Theodore S. Danchi, for defendant appellee Sims Metal Works, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Mark A. Ash and Stuart B. Dorsett, for defendant appellee Commercial Union Insurance Company.*

ARNOLD, Judge.

The first issue on appeal is whether the trial court properly granted a directed verdict against plaintiff on the ground that the products liability statute of repose, N.C. Gen. Stat. § 1-50(6), barred plaintiff's action. Plaintiff has the burden of proving the condition precedent that its cause of action is brought no "more than six years after the date of initial purchase for use or consumption." *Bolick v. American Barmag Corp.*, 306 N.C. 364, 370, 293 S.E.2d 415, 420 (1982). Whether a statute of repose has expired is a question of law, *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871-2 (1983). If plaintiff fails to prove that its cause of action is brought before the repose period has expired, a directed verdict for defendant is appropriate, since plaintiff's case is insufficient as a matter of law.

The controlling statute on the question before us is N.C. Gen. Stat. § 1-50(6), which provides:

No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall

be brought more than six years after the date of initial purchase for use or consumption.

[1]  Plaintiff contends that the products "purchase[d] for use" were the two drying ranges and that the "initial purchase for use" of those ranges was made by plaintiff. Defendants, on the other hand, argue that the product "purchase[d] for use" was the pressure vessel that exploded and that the "initial purchase for use" was made by American Tool, when it purchased the pressure vessels from Sims to assemble them into drying ranges.

Neither N.C. Gen. Stat. § 1-50(6) nor Chapter 99B defines "initial purchase for use." Plaintiff relies on *Tetterton v. Long Manufacturing Co.*, 314 N.C. 44, 332 S.E.2d 67 (1985), which upheld N.C. Gen. Stat. § 1-50(6) against several challenges to its constitutionality. In *Tetterton*, defendant Long Manufacturing Company, Inc. (Long) manufactured a tobacco harvester, sold the harvester to a dealer and distributor, who subsequently sold it to Jimmy Ray Casey, a farmer. *Id.* at 46, 332 S.E.2d at 68. The farmer used the equipment on his farm until he sold it to defendant Revels Tractor Company, Inc. (Revels). *Id.* Revels subsequently sold the harvester to plaintiff appellant's husband, also a farmer. *Id.* Plaintiff's husband was killed while operating the harvester on his farm. *Id.* Plaintiff's products liability claims against manufacturer Long were dismissed on Long's summary judgment motion on the ground that plaintiff's action against Long was barred by N.C. Gen. Stat. § 1-50(6). *Id.* On appeal, plaintiff challenged the language "initial purchase for use or consumption" as unconstitutionally vague. *Id.* at 54, 332 S.E.2d at 73. Plaintiff argued that the language in question could reasonably refer to any of three different dates: (1) the date the manufacturer Long sold the harvester to the dealer-distributor; (2) the date the dealer-distributor sold the harvester to the farmer Casey; (3) the date Revels Tractor Company sold the harvester to plaintiff's intestate Tetterton. *Id.* at 54-5, 332 S.E.2d at 73. The Supreme Court rejected plaintiff's vagueness challenge and found that "[t]he first purchase in this case 'for use or consumption' was by farmer Casey" (date (2) above). *Id.* at 56, 332 S.E.2d at 74. A dealer-distributor's purchase of a product for the purpose of resale is not the "initial purchase for use" within the meaning of N.C. Gen. Stat. § 1-50(6). *See id. Accord Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480 (Ind. App. 1984).

In this case, American Tool's "use" of the eighty pressure vessels was to assemble those and other component parts into the two drying ranges and install those ranges in plaintiff's plant in accordance with their contract with plaintiff. We hold that American Tool's purchase of the component parts for the purpose of assembly into a drying range, like a dealer-distributor's purchase of a product for the purpose of resale, is not the "initial purchase for use" within the meaning of N.C. Gen. Stat. § 1-50(6). Chicopee's purchase of the drying ranges for the purpose of manufacturing textiles was the "initial purchase for use" because manufacturing textiles was the ultimate or intended use of this product. *Accord Wilson v. Studebaker-Worthington, Inc.*, 699 F. Supp. 711 (1987) (Under Indiana statute of repose, company which ordered assembled product was "user or consumer," not subcontractor which, by assembling product, functioned as a go-between.); *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985) (Under Nebraska statute of repose, plumbing pipe was first sold for use when homeowner took possession of house of which pipe was a part, not when plumbing subcontractor purchased pipe from pipe manufacturer.); *see* Am. Law of Prod. Liab. 3d § 47.46 at 60.

This construction of the statutory language "initial purchase for use" does not offend the policy behind the statute of repose. As our Supreme Court stated in *Tetterton*, the intent of the legislature in enacting the statute of repose was "to limit the manufacturer's liability at some *definite point in time*." *Tetterton* at 56, 332 S.E.2d at 74 (emphasis added). The legislature wanted to avoid subjecting manufacturers to " 'open-ended' liability created by allowing claims for an *indefinite* period of time after the product was first sold and distributed." *Id.* at 54, 332 S.E.2d at 73 (emphasis added). The issue in this case is determining that definite point in time, six years after which manufacturers will no longer be subject to products liability actions. As we have construed the statutory language, defendants' liability would end six years from the date their pressure vessels, as assembled into drying ranges, were purchased by Chicopee, the initial user.

Defendants argue under this statutory construction, that if American Tool kept defendants' component parts in inventory for a time, defendants' liability would extend more than six years from the date of their sale to American Tool. While this is a possibility, it is not a consequence that offends the purpose behind the statute of repose. Defendants will still be shielded from liability

after six years from the date American Tool sells the completed product to its ultimate user. Defendants' position is no different from that of the tobacco harvester manufacturer in *Tetterton*, whose liability will not end until after six years from the date the equipment is sold by a dealer-distributor to an ultimate user. Neither defendants here, nor the defendant manufacturer in *Tetterton*, can control when the "initial purchase for use" occurs, and they will nevertheless be shielded from liability at a *definite point in time*. *See id.* at 56, 332 S.E.2d at 74. Other state statutes of repose begin their limitations period as of "the date of first sale, lease or delivery" of the product, Ill. Rev. Stat. ch. 110, para. 13-213(b), or "the date that the party last parted with possession or control of the product," Conn. Gen. Stat. § 52-577a, giving manufacturers control over when the limitations period begins. Our legislature, however, chose to begin the limitations period at the date of "initial purchase *for use*," not landmarks such as those chosen by the Illinois or Connecticut legislatures.

Having determined that Chicopee, not American Tool, was the "initial purchaser for use," we next decide if Chicopee's products liability action against defendants was brought no more than "six years after the date of initial purchase for use." Plaintiff argues that the date all component parts of the drying ranges, which were to be assembled on plaintiff's premises, were received at plaintiff's plant determines the date of purchase. Defendants contend that, because "purchase" is not defined in N.C. Gen. Stat. § 1-50(6) or in Chapter 99B, we should look to the Uniform Commercial Code (UCC) to determine the date of purchase. We disagree. Plaintiff's claims against defendants for negligent manufacture and inspection do not arise under the UCC. Under these circumstances, the UCC is not authoritative on the question of when plaintiff purchased the drying ranges.

[2] Plaintiff filed its complaint on 19 September 1986. Therefore, for its products liability action to be timely under N.C. Gen. Stat. § 1-50(6), plaintiff must show that the drying ranges were initially purchased for use after 19 September 1980. Plaintiff's evidence showed that on 19 September 1980, component parts of the drying ranges were still being shipped to plaintiff's plant for assembly and installation. Therefore, without determining precisely when plaintiff's purchase of the drying ranges was complete, we find that plaintiff discharged its burden of proving that its action was

brought no more than six years after the initial purchase for use or consumption.

Plaintiff next assigns error to the denial of its motion to amend its complaint. Plaintiff's original complaint, alleging negligent manufacture and inspection of the pressure vessels by defendants Sims and Commercial Union, was filed on 19 September 1986. On 1 February 1988, plaintiff moved to amend its complaint 1) to allege fraud and unfair trade practices in the inspection of the pressure vessels against defendants Sims and Commercial Union as well as against three new defendants, William C. Sims, Jr., McCoy-Ellison, Inc., and Daniel W. McCoy, the former and current principals of Sims and its successor corporation, and 2) to add as new defendants Mary T. Sims, William Curtis Sims, Jr., and Joe N. Sims pursuant to a provision in the Articles of Dissolution filed by Sims on 17 June 1987 that guaranteed that they had made adequate provision for the satisfaction of any judgment rendered against Sims. Judge Brewer signed three orders: one order stated that "the substantive law of Alabama applies to the plaintiff's proposed amended causes of action, and that said motion should be denied." The second order stated that North Carolina law applied and denied plaintiff's motion, while the third order denied plaintiff's motion without further elaboration.

Amendment of pleadings after a response has been served is only by "leave of court . . . and leave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A-1, Rule 15(a). A motion for leave to amend is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of abuse of discretion. *Martin v. Hare*, 78 N.C. App. 358, 360-1, 337 S.E.2d 632, 634 (1985). Although a trial court is not required to state specific reasons for denial of a motion to amend, *see id.* at 361, 337 S.E.2d at 634, reasons that would justify a denial are "(a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Id.*

From the orders appealed from, it appears that the trial court chose to state specific reasons for denying plaintiff's motion to amend, and stated those "reasons" as conclusions according to what substantive law governed plaintiff's proposed additional causes of action. The "reasons" stated in the orders, however, are inconsistent, since one order concludes that Alabama law governs while

another order concludes that North Carolina law governs. The "reasons" stated are also incomplete. The fact that a particular state's law governs does not specifically explain why the plaintiff's motion to amend should be denied.

[3] When the trial court fails to state specific reasons for denial of a motion to amend or when the trial court states inconsistent and incomplete reasons, this Court *may* nonetheless examine any apparent reasons for such denial. *See id.* (emphasis added). However, since we are reversing the directed verdict for defendants and remanding the case for trial on plaintiff's negligence claim, we direct the trial court on remand to reconsider plaintiff's motion to amend, *see Murphy v. Murphy*, 295 N.C. 390, 398, 245 S.E.2d 693, 698-99 (1978); Shuford, N.C. Civil Practice and Procedure § 15-5 (3d ed. 1988).

[4] We note that plaintiff brought a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60 requesting that the trial court "correct the clerical mistake in plaintiff's submitting three orders, and the Court's signing all three. This Court should further clarify whether . . . Alabama law or North Carolina applies to plaintiff's claims against Sims and Commercial Union." The questions presented by plaintiff's Rule 60 motion were questions of law: whether the trial court abused its discretion in denying plaintiff's motion to amend and whether Alabama or North Carolina law applied to plaintiff's claims. Erroneous judgments may be corrected only by appeal, and a motion under this rule cannot be used as a substitute for appellate review. *Town of Sylva v. Gibson*, 51 N.C. App. 545, 548, 277 S.E.2d 115, 117, *appeal dismissed and cert. denied*, 303 N.C. 319, 281 S.E.2d 659 (1981). Since Rule 60 was not an appropriate vehicle by which to seek review of Judge Brewer's orders on plaintiff's motion to amend, as well as our decision to direct a reconsideration of that motion, we will not consider Judge Manning's disposition of this aspect of plaintiff's Rule 60 motion.

[5] The question presented by plaintiff's last assignment of error is whether Judge Brewer erred in granting partial summary judgment to defendants Sims and Commercial Union on the issue of damages. Judge Brewer's order of 19 May 1988 stated:

[A]s a matter of law, the plaintiff's recoverable damages must be limited to actual damage to property resulting from the alleged negligence of the defendants and cannot include economic

or pecuniary losses such as the costs to replace property not damaged by the explosion described in the complaint.

Our state courts have not decided whether, in the context of a products liability suit, purely economic losses can be recovered in an action for negligence. The majority of courts which have considered this question have held that purely economic losses are not ordinarily recoverable under tort law. *2000 Watermark Ass'n, Inc. v. Celotex Corp.*, 784 F.2d 1183, 1185 (1986), and cases cited therein. We adopt this rule and find no error in Judge Brewer's order.

We note that plaintiff's Rule 60 motion sought relief from Judge Brewer's order at issue here. As with the portion of plaintiff's Rule 60 motion challenging Judge Brewer's order denying plaintiff's motion to amend, the portion of the Rule 60 motion challenging Judge Brewer's summary judgment order raises a question of law. Since erroneous judgments may be corrected only by appeal, not by a Rule 60 motion, *Town of Sylva*, this portion of plaintiff's Rule 60 motion was also improperly brought.

In sum, we reverse the directed verdict in favor of defendants and remand for trial. On remand, the trial court should reconsider plaintiff's 1 February 1988 motion to amend. We affirm the grant of partial summary judgment on the damages issue.

Affirmed in part; and reversed and remanded in part.

Chief Judge HEDRICK and Judge WELLS concur.