RAMON KENT HENDERSON, AND WIFE, KYMBERLEY ANNE HENDERSON v. PARK HOMES INCORPORATED; SOUTHERN SYNTHETIC & PLASTIC, INC.; AND DRYVIT SYSTEMS, INC.

No. COA00-1114

(Filed 4 December 2001)

### 1. Appeal and Error— appealability—summary judgment as to only remaining defendant—appeal not interlocutory

A summary judgment was final and not interlocutory as to one of three defendants where one of the other defendants had made no appearance and the other settled.

### 2. Statutes of Limitations and Repose— synthetic stucco— statute of repose—products liability rather than real property statute controls

The products liability rather than real property statute of repose applied to a synthetic stucco action where defendant was a remote manufacturer and the product made its way to plaintiffs through the commerce stream. Defendant was not a

HENDERSON v. PARK HOMES, INC.

[147 N.C. App. 500 (2001)]

materialman who furnished materials to the job sites under N.C.G.S. § 1-50(a)(5)(b)(9).

**3. Statutes of Limitations and Repose— synthetic stucco— statute of repose—began to run at contractor's purchase of product**

The statute of repose barred a synthetic stucco action where the statute began to run when the synthetic stucco was first purchased by the subcontractor for installation on plaintiffs' residence rather than when plaintiffs purchased their house. Plaintiffs had 6 years to file suit after the "initial purchase or consumption," which occurred at the subcontractor's purchase because the ultimate and intended use of providing a weatherproof barrier began at the moment of application.

**4. Statutes of Limitations and Repose— not tolled by class action**

The statute of repose in a synthetic stucco claim was not tolled by the filing of a class action suit. A statute of repose creates substantive rights that may not be tolled by equitable considerations.

Appeal by plaintiffs from judgment entered 18 April 2000 by Judge Orlando Hudson in Wake County Superior Court. Heard in the Court of Appeals 20 August 2001.

*Lewis & Roberts, P.L.L.C., by Daniel K. Bryson and F. Murphy Averitt,III, for plaintiffs-appellants.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Hada Haulsee, Scott Mebane and Charles L. Becker, for defendant-appellee.*

THOMAS, Judge.

This case concerns alleged defects in synthetic stucco applied to the home of plaintiffs, Ramon Kent Henderson and wife, Kymberley Anne Henderson. The trial court granted summary judgment for defendant, Dryvit Systems, Inc., based on the products liability statute of repose and the statute of limitations.

Plaintiffs appeal, arguing four assignments of error. For the reasoning herein, we affirm the decision of the trial court.

Plaintiffs entered into a purchase agreement with defendant, Park Homes Incorporated (Park Homes), on or about 23 June 1992 for construction of a house. Park Homes, in turn, subcontracted with defendant, Southern Synthetic & Plastic, Inc. (Southern), for the task

**HENDERSON v. PARK HOMES, INC.**

[147 N.C. App. 500 (2001)]

of cladding the exterior of the house with a manufactured exterior insulation finish system (EIFS), commonly known as synthetic stucco. Southern purchased the EIFS from defendant, Dryvit Systems, Inc., (Dryvit), a manufacturer and distributor of the EIFS.

In the fall of 1992, workers for Southern applied the EIFS manufactured by Dryvit to the house plaintiffs agreed to purchase. The certificate of occupancy was issued on 5 April 1993. Shortly thereafter, plaintiffs closed on the purchase and moved into their home. Through media reports, plaintiffs learned in the spring of 1996 that there may be defects associated with the EIFS. A moisture intrusion inspection report, dated 31 May 1996, confirmed that plaintiffs' home did indeed have moisture intrusion problems due to defective EIFS cladding. Plaintiffs filed suit against defendants on 5 March 1999. On 16 July 1999, plaintiffs opted out of *Ruff v. Parex*, 96-CVS-0059, a class action lawsuit against Dryvit and other EIFS manufacturers asserting claims essentially identical to those alleged by plaintiffs.

The trial court granted Dryvit's motion for summary judgment on two grounds. First, the trial court found that the appropriate statute of repose was N.C. Gen. Stat. § 1-50(a)(6), the products liability statute of repose, and that it barred plaintiffs' claims against defendant. Second, the trial court found that the applicable statute of limitations had run because more than three years had passed since plaintiffs first noticed bulging and wrinkling on the surface of the EIFS. Plaintiffs advance four arguments in maintaining that the trial court erred.

[1] Initially, we note that the summary judgment order from which defendant appeals is not interlocutory. Rather, it is a final judgment that is immediately appealable because Park Homes settled with plaintiffs and Southern made no appearance. *See Jenkins v. Wheeler*, 69 N.C. App. 140, 142, 316 S.E.2d 354, 356, *disc. review denied*, 311 N.C. 758, 321 S.E.2d 136 (1984) (order dismissing claims against one defendant is interlocutory where other defendants remain in the suit). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2000).

Plaintiffs first argue that their action is governed by the real property statute of repose, and that their claims were filed within six years of "the later of the specific last act or omission of the defend-

ant . . . or substantial completion of the improvement." N.C. Gen. Stat. § 1-50(a)(5) (1999). Second, plaintiffs maintain that if the products liability statute of repose applies, their claims against Dryvit were filed within six years of the "initial purchase for use or consumption" of the residence, and thus complied with the statute. N.C. Gen. Stat. § 1-50(a)(6) (1999). Third, plaintiffs contend that the statute of repose was tolled with respect to their claims against Dryvit by the filing of *Ruff v. Parex* in 1996. Finally, plaintiffs argue that this action is not barred by the applicable three-year statute of limitations, N.C. Gen. Stat. § 1-50(a)(5)(f), which provides that the cause of action "shall not accrue until the injury, loss, defect or damage becomes apparent or ought reasonably to have become apparent to the claimant." N.C. Gen. Stat. § 1-50(a)(5)(f) (1999). We consider plaintiffs' arguments in the above order.

[2] Dryvit, which uses a wholesale distribution network, is a remote manufacturer. The EIFS made its way to plaintiffs' home through the commerce stream, thus implicating the products liability statute of repose, N.C. Gen. Stat. § 1-50(a)(6). *See Forsyth Memorial Hospital v. Armstrong World Industries*, 336 N.C. 438, 445, 444 S.E.2d 423, 427 (1994) (products liability statute of repose, as opposed to real property statute of repose, N.C. Gen. Stat. § 1-50(a)(5)(b)(9), applies to remote manufacturer whose materials find their way to a job site indirectly through the commerce stream; such manufacturer would not be a materialman who furnished materials to the job site under N.C. Gen. Stat. § 1-50(a)(5)(b)(9)).

We therefore apply the products liability statute of repose, section 1-50(a)(6), which provides:

No action for recovery of damages . . . based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

N.C. Gen. Stat. § 1-50(a)(6).

[3] Plaintiffs claim the running of the time period did not begin until the date of the purchase of their home in April of 1993. This Court, however, recently held that the statute of repose was triggered upon the purchase by the subcontractor of the EIFS for installation on the plaintiffs' house. *See Cacha v. Montaco*, 147 N.C. App. 21, 554 S.E.2d 388 (2001). The holding in *Cacha* turned on the interpretation of

"initial purchase for use or consumption." After the "initial purchase for use or consumption," the plaintiffs had six years to file suit against the EIFS manufacturer before their claims would be barred; the statute, however, does not define the phrase, nor does it have a clear, independent meaning of its own. *See* N.C. Gen. Stat. § 1-50(a)(6). This Court, therefore, examined the definitions of "use" and "consume." *Cacha* at 23-4, 554 S.E.2d at 390. In addition, the Court relied on the holding in *Chicopee, Inc. v. Sims Metal Works*, that the date of initial purchase for use under section 1-50(a)(6) is the date of purchase for the "ultimate and intended use of the product." *Chicopee*, 98 N.C. App. 423, 428, 391 S.E.2d 211, 214, *disc. review denied* 327 N.C. 426, 395 S.E.2d 674 (1990) (purchase for assembly is not purchase for use). *See also Tetterton v. Long Manufacturing Co.*, 314 N.C. 44, 332 S.E.2d 67 (1985) (purchase for resale is not purchase for use). The ultimate and intended use of the EIFS is to provide a weather-resistant barrier to protect the house interior from exposure to the weather. *See Cacha* at 30, 554 S.E.2d at 393-4. The EIFS begins to perform this function at the moment of application. *Id.* The EIFS, therefore, was first "purchased for use or consumption," by the subcontractor who applied the EIFS to the plaintiffs' residence. *Id.* Once the applicator applied the EIFS,

> it was "consumed," that is, "utilized in the construction process," which use resulted in its transformation . . . and the destruction of its original form . . . .

*Id.*

Accordingly, the EIFS was first purchased for use or consumption by Southern for installation on plaintiffs' residence. Southern installed the EIFS on plaintiffs' home in late fall of 1992. The statute of repose, therefore, began to run before 5 March 1993, and plaintiffs' suit, filed more than six years after Southern's purchase of the EIFS, is barred. *See* N.C. Gen. Stat. § 1-50(a)(6).

[4] By their third assignment of error, plaintiffs argue that even if the products liability statute of repose is the appropriate one to apply, and even if it began running prior to 5 March 1999, the statute of repose regarding their claims against defendant was equitably tolled by the filing of *Ruff v. Parex* in 1996. This same contention was rejected in *Cacha*, which held that a statute of repose creates substantive rights that may not be tolled by equitable considerations. *See Cacha* at 27-9, 554 S.E.2d at 392-3.

Based on the foregoing, we need not address plaintiffs' final assignment of error regarding the statute of limitations, N.C. Gen. Stat. § 1-50(a)(5)(f).

Accordingly, we affirm the order of the trial court granting the summary judgment motion of defendant.

AFFIRMED.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.