Denver Prop. Partners, LLC v. Sisson, 2021 NCBC 39.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

BAYPORT HOLDINGS, INC. d/b/a
DENVER DEFENSE RANGE &
FIREARMS,

       Plaintiff,

v.

BRIAN P. SISSON; and LAKE NORMAN
SPORTING ARMS AND RANGE, INC.
d/b/a THE RANGE AT LAKE NORMAN,
d/b/a THE RANGE AT BALLANTYNE,
d/b/a PINEVILLE GUN SHOP,

       Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 725

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
RELIEF FROM JUDGMENT
PURSUANT TO N.C. RULE OF
CIVIL PROCEDURE 60(b)**

1.    **THIS MATTER** is before the Court on Plaintiffs' [sic] Motion for Relief from Judgment Pursuant to N.C. Rule of Civil Procedure 60(b) (the "Motion") filed by plaintiff Bayport Holdings, Inc. ("Plaintiff")[1] on 22 April 2021.  (Mot., ECF No. 96.) Alleging that defendant Brian P. Sisson ("Sisson") "committed a fraud upon this Court," Plaintiff requests that the Court set aside its Final Order and Judgment entered on 23 April 2020 in this action, (ECF No. 88), and grant Plaintiff a new trial pursuant to Rule 60(b)(3).  (Mot. 1.)  Sisson and defendant Lake Norman Sporting Arms and Range, Inc. ("LNSAR") (together, "Defendants") oppose the Motion.  For the reasons set forth in this Order and Opinion, the Court **DENIES** the Motion.

---

[1] Although Denver Property Partners, LLC is no longer a party to this action, the Court will continue to use the case name *Denver Prop. Partners, LLC v. Sisson* in the e-docket for this case and when publishing this Order and Opinion, as prior orders in this litigation have been entered and published under that case name, including the Court's order subject to the Motion.

*Elliott Law Firm, PC, by Michael K. Elliott, and The Wallace Law Firm, by Stephen F. Wallace, for plaintiff Bayport Holdings, Inc.*

*Sisson Law Firm, PLLC, by Kevin M. Sisson, and The McIntosh Law Firm P.C., by Christopher P. Gelwicks, for defendants Brian P. Sisson and Lake Norman Sporting Arms and Range, Inc.*

Robinson, Judge.

## I.    BACKGROUND

2.    This litigation arose from Sisson's involvement with Denver Defense Range & Firearms ("Denver Defense"), an indoor shooting range and firearms retail store owned and operated by Plaintiff during the time period relevant to the litigation. (*See generally* Compl., ECF No. 3; Am. Answer & Countercls., ECF No. 15.)

3.    This case came on for trial before the undersigned and a duly empaneled jury on 13 January 2020 in the Superior Court of Lincoln County, North Carolina. After a five-day trial, the jury returned its verdict on the issues of liability and damages for both Plaintiff's claims and Defendants' counterclaims. (*See* Verdict Sheet, ECF No. 76.)    A total of 43 issues were submitted to the jury for consideration. (Verdict Sheet.)

4.    Based on the jury's verdict, as well as the Court's conclusions of law regarding the parties' respective claims for unfair or deceptive trade practices ("UDTP"), the Court entered its Final Order and Judgment on 23 April 2020 and ordered as follows:

A. That judgment is entered for Plaintiff as to its claim for unfair and deceptive trade practices against Sisson in the amount of $3.00.

B.  That judgment is entered for Defendant LNSAR as to its conversion of property claim against Plaintiff and Plaintiff shall pay to LNSAR damages in the amount of $18,500.00.

C.  That judgment is entered for Sisson as to his claim for negligent misrepresentation against Plaintiff, which constitutes as an unfair or deceptive trade practice, and accordingly Plaintiff shall pay to Sisson damages in the amount of $9,000.00.

D.  That judgment is otherwise entered for Sisson as to his UDTP claim against Plaintiff for Plaintiff misleading its inventory numbers to Sisson in order to entice him to enter into the Management Agreement, and Plaintiff shall pay to Sisson damages in the amount of $13.50.

E.  That all other claims brought by the parties to this lawsuit, except as those explicitly set forth in subparagraphs A—D of this paragraph, are hereby entered in favor of the defending party thereto and these claims are **DISMISSED WITH PREJUDICE**.

F.  The foregoing represents a complete and final disposition of all claims in this case.

G.  The Court shall address, if necessary, the taxation of costs as may be submitted by a party claiming entitlement to the same based on this Final Judgment.  Any such submission shall be made by separate motion supported by one or more affidavits, documentary receipts, and a brief in support.

*Denver Prop. Partners, LLC v. Sisson*, 2020 NCBC LEXIS 54, at *22–23 (N.C. Super. Ct. Apr. 23, 2020).

5.  Thereafter, on 3 May 2020, Plaintiff filed a motion for judgment notwithstanding the jury's verdict as to Plaintiff's breach of fiduciary duty claim, or, alternatively, for a new trial on that claim pursuant to North Carolina Rules of Civil Procedure 50 and 59, which the Court denied on 15 July 2020.  *See Denver Prop. Partners, LLC v. Sisson*, 2020 NCBC LEXIS 83 (N.C. Super. Ct. July 15, 2020).

6. Plaintiff did not appeal either the Court's Final Order and Judgment or the Court's order denying Plaintiff's motion filed pursuant to Rules 50 and 59. Accordingly, this case was closed, (*see* ECF No. 95), and remained dormant until 22 April 2021, when Plaintiff filed the Motion.

7. As noted, based on Plaintiff's allegation that Sisson committed fraud in this action, Plaintiff, through the Motion, seeks relief from the Court's Final Order and Judgment and a new trial pursuant to Rule 60(b)(3).[2] (Mot. 1.)

8. After full briefing, the Court held a hearing on the Motion by video conference on 26 May 2021, (ECF No. 103), at which all parties were represented by counsel. The Motion is now ripe for resolution.

## II. LEGAL STANDARD

9. "[A] motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court." *Sink v. Easter*, 288 N.C. 183, 198 (1975). Rule 60(b)(3) permits a trial court to set aside a final judgment, order, or proceeding based on fraud, misrepresentation, or other misconduct by an adverse party. N.C.G.S. § 1A-1, Rule 60(b). A Rule 60(b)(3) motion "shall be made within a reasonable time," and "not more than one year after the judgment, order, or proceeding was entered or taken." *Id.*

---

[2] Although the Motion broadly states that Plaintiff seeks relief pursuant to Rule 60(b), (Mot. 1), in its supporting brief, Plaintiff focuses almost exclusively on the standard for obtaining relief under Rule 60(b)(3), (*see* Pl.'s Br. Supporting Rule 60(b) Mot. 7–8, ECF No. 97 ["Supp. Br."]). Moreover, at the hearing on the Motion, Plaintiff's counsel represented to the Court that Plaintiff is seeking relief only under 60(b)(3), and not under any other section or subsection of Rule 60. Accordingly, the Court understands the Motion to be brought only under Rule 60(b)(3).

10.    "To obtain relief under Rule 60(b)(3), the moving party must 1) have a meritorious defense, 2) that he was prevented from presenting prior to judgment, 3) because of fraud, misrepresentation or misconduct by the adverse party." *Milton M. Croom Charitable Remainder Unitrust v. Hedrick*, 188 N.C. App. 262, 268 (2008) (citation omitted).

11.    North Carolina courts have not identified the burden of proof that applies to allegations of fraud under Rule 60(b)(3).  However, federal courts addressing the similarly worded Federal Rule of Civil Procedure 60(b)(3) have determined that the fraud contemplated by that rule must be established by the movant by clear and convincing evidence.  *See, e.g.*, *Cap Exp., LLC v. Zinus, Inc.*, No. 2020-2087, 2021 U.S. App. LEXIS 13322, at \*1338 (Fed. Cir. May 5, 2021) ("To prevail [under Rule 60(b)(3)], the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." (citation omitted)); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981) (stating that "[a] party seeking relief under [Rule 60(b)(3)] must also prove the misconduct complained of by clear and convincing evidence" in order to obtain such relief).

12.    The Court finds this analogous federal law persuasive in the absence of contrary controlling North Carolina law.  *See Turner v. Duke Univ.*, 325 N.C. 152, 164 (1989) ("The North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules. . . . Decisions under the federal rules are

thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules."). In addition, at the hearing on the Motion, Plaintiff's counsel agreed that the proper burden of proof to apply in this matter is clear and convincing evidence. Accordingly, the Court concludes that, for purposes of Plaintiff's request for relief under Rule 60(b)(3) based on alleged fraud by Sisson, Plaintiff must prove such fraud by clear and convincing evidence.

### III. ANALYSIS

13. As to the timeliness of the Motion, Defendants have not challenged whether the Motion was filed within a reasonable time, and Plaintiff filed the Motion just within one year of the entry of the Court's Final Order and Judgment. Thus, as a threshold matter, the Court concludes that Plaintiff timely filed the Motion.

14. The Court next considers Plaintiff's allegation that Sisson committed fraud in this litigation, beginning with a summary of the documents that Plaintiff relies on in making this allegation.

### A. Documents that Form the Basis for Plaintiff's Fraud Allegation

15. Plaintiff alleges that Sisson committed fraud based on documents that Plaintiff represents it retrieved from (1) a file folder belonging to Sisson and (2) a Gmail account belonging to Robert Watson ("Watson"), a shareholder of Plaintiff. (*See* Supp. Br. 2–6.)

#### i. *Sisson's File Folder*

16. The facts adduced to the jury at trial revealed that, after managing Denver Defense for several months, Sisson abruptly cleaned out much of the inventory of the

store and other personal property and abandoned the premises in mid-May 2018, advising Watson that he was resigning as manager and would no longer be coming to the store. As a result, Plaintiff had unilateral access to the store and its contents, without interference by Sisson, after Sisson left. The evidence further revealed that Plaintiff attempted to resume operations at Denver Defense, but eventually closed it down. This litigation ensued shortly thereafter.

17. A logical conclusion from this history (a conclusion Plaintiff does not dispute) is that any documents that may have been located in the store after Sisson's departure would have been in Plaintiff's sole possession, custody, and control thereafter—including any documents relating to Sisson's investigation and management of the store.

18. With this background in mind, the Court now turns to Plaintiff's narrative regarding the file folder belonging to Sisson from his time managing Denver Defense.

19. On 15 December 2019, Watson was notified by an individual named Bud Cesena that several boxes needed to be picked up from the premises of Denver Defense.[3] (Aff. of Robert "Bob" Watson ¶ 7, ECF No. 99 ["Watson Aff."].) Watson picked up the boxes that same day. (Watson Aff. ¶ 8.) However, because Watson and Bud Cesena "assumed that these boxes contained only financial or transactional papers related to operations prior to Sisson's management" of Denver Defense, the

---

[3] It appears that Bud Cesena asked Watson to pick up these boxes in preparation for a foreclosure sale of the Denver Defense store building that occurred on or about 19 December 2019. (*See* Supp. Br. 3.)

contents of the boxes were not examined until more than one year later, on 29 January 2021. (Supp. Br. 3; *see also* Watson Aff. ¶¶ 6, 9.)

20. On that date, Watson gave the boxes to other shareholders of Plaintiff and their counsel, who then examined the contents of the boxes in connection with separate, ongoing litigation with First National Bank of Pennsylvania ("First National Bank"). (Supp. Br. 3; Watson Aff. ¶ 9.)

21. Inside the boxes, the shareholders of Plaintiff and their counsel found a file folder containing certain documents, which Plaintiff has filed as exhibits to its supporting brief.[4] (*See* Supp. Br. 2–5.) The following is a brief description of those documents:

a. Exhibit B: a document containing handwritten notes, which Plaintiff contends were written by Sisson, (Ex. B, at 4–6);
b. Exhibit C: a document entitled "SBA 504 Loan Application," (Ex. C, at 7–21);
c. Exhibit D: a document entitled "Team Schedule week ending 12/31" that bears LNSAR's name, (Ex. D, at 22–23);
d. Exhibit H: a document entitled "Contract for Deed" that appears to have been signed by Watson on behalf of Plaintiff, (Ex. H, at 38–60);
e. Exhibit I: an unsigned document entitled "Contract for Deed," that has the word "Original" handwritten at the top of the first page, (Ex. I, at 61–81);
f. Exhibit J: a document entitled "Contract for Deed" that appears to have been signed by Sisson, (Ex. J, at 82–104); and
g. Exhibit K: an unsigned document entitled "Management Agreement," (Ex. K, at 105–123).

---

[4] Plaintiff included these exhibits within a single 428-page PDF file containing several other exhibits. The entire PDF file is available at ECF No. 98 and has been consecutively numbered by Plaintiff. For ease of reference, when citing to a document from this PDF file, the Court will identify the document by referencing the applicable exhibit number (as designated by Plaintiff) and page number(s) from the PDF file.

Plaintiff asserts that these documents belong to Sisson from his time managing Denver Defense and that they prove Sisson committed fraud. (*See* Supp. Br. 2–12.)

22. Defendants do not dispute that these documents belong to Sisson, but they do dispute Plaintiff's assertion that the documents demonstrate fraud by Sisson, as addressed more fully below. (*See* Mem. in Opp'n, ECF No. 101.)

### ii. *Watson's Gmail Account*

23. Plaintiff also argues, and Defendants again dispute, that certain e-mails contained in Exhibit A to Plaintiff's supporting brief, (Ex. A, at 1–3), are further evidence of Sisson's fraud. (*See* Supp. Br. 6; Mem. in Opp'n 7–8.) These e-mails, which Plaintiff retrieved from Watson's Gmail account (robertewatson@gmail.com), are from representatives of Self-Help Ventures Fund ("Self-Help"), the lender that was responsible for collecting payments on a loan that the U.S. Small Business Administration (the "SBA") issued to Plaintiff. (*See* Supp. Br. 5–6.)

24. The e-mails from the Self-Help representatives are dated 22 December 2017. (Ex. A.) Plaintiff did not produce these e-mails during the discovery phase of this litigation, though Plaintiff seemingly admits that the e-mails may have been relevant and responsive to Defendants' discovery requests.

25. Plaintiff's explanation for not producing these e-mails during discovery is that Watson could not remember the password to his Gmail account, where the e-mails were archived, for approximately three years. (*See* Supp. Br. 5–6; Watson Aff. ¶¶ 12–16.) According to Plaintiff and Watson, on 23 March 2021, Watson, with the assistance of his wife and another shareholder of Plaintiff, was able to remember

the password to his Gmail account, thereby permitting him to access his archived e-mails from that account, including the e-mails from the Self-Help representatives. (*See* Supp. Br. 6; Watson Aff. ¶ 15.)

## B. The Nature of Plaintiff's Fraud Allegation

26. Based on Plaintiff's briefing and the oral argument of its counsel, the Court understands Plaintiff to allege four separate instances of fraud by Sisson, which the Court now addresses in turn.

### i. *Alleged Fraud Regarding Defaulted Bank Loans*

27. At trial, Issue No. 40 asked the jury whether Plaintiff failed to notify Sisson prior to his signing a document entitled Management Agreement that Plaintiff was in default on certain bank loans, to which the jury answered yes. (Verdict Sheet Issue No. 40.)

28. Plaintiff contends that this finding by the jury was obtained through Sisson's fraud. According to Plaintiff, Exhibits A and B to its supporting brief show that Sisson knew as early as 19 December 2017 that Plaintiff was in default on the bank loans in question, thereby contradicting Sisson's deposition and trial testimony that he lacked this knowledge about the defaulted status of the loans prior to signing the Management Agreement. (*See* Supp. Br. 6, 8–10.)

29. Exhibit A contains the following e-mail dated 22 December 2017 from Dale Harrold ("Harrold"), a representative of Self-Help, to Watson, on behalf of Plaintiff, which Plaintiff avers is evidence of Sisson's alleged fraud regarding Issue No. 40:

> Bob [Watson], it's my understanding that the proposed new ownership group will take over management and debt payments as of 1/1/2018.

However, I'm writing to remind you that we will need the November payment wired per Paul's instructions below no later than next Thursday December 28th in order to prevent 60-day delinquency.

Brian [Sisson] and I had a good conversation this afternoon. He may be a candidate to assume the existing loan. As we discussed previously, the loan needs to continue to stay less than 60 days delinquent in order for us to maintain flexibility with the SBA. The loan will become 60-days delinquent on January 1, 2018 unless this payment is made.

(Ex. A, at 2.)

30. As is apparent on the face of this e-mail, Sisson is not a recipient of this communication, and as Defendants point out, Plaintiff has not submitted any evidence establishing that Sisson was otherwise aware of this e-mail from Harrold to Watson. (Mem. in Opp'n 7.) And in the absence of such evidence, or other evidence shedding light on the specific nature of the "conversation" between Harrold and Sisson, this e-mail falls well short of clearly and convincingly proving that Sisson was made aware (by Harrold or Plaintiff) prior to Sisson's signing the Management Agreement that Plaintiff was in default on the SBA loan.

31. Moreover, Defendants note that, although Harrold reminded Watson in the e-mail that the SBA loan was "less than 60 days delinquent" as of 22 December 2017, Harrold did not specifically say that the loan was in default at the time. (Mem. in Opp'n 7–8.) Thus, even assuming *arguendo* that Harrold also told Sisson that the SBA loan was "less than 60 days delinquent," this information standing alone would not clearly and convincingly show that Sisson knew Plaintiff was in default on the loan as of 22 December 2017, since Plaintiff has not provided evidence that could

permit the Court to conclude that Sisson understood "less than 60 days delinquent" to mean "in default."[5]

32.    Exhibit B suffers from similar deficiencies.  This document contains the following handwritten notes (which Defendants do not deny were written by Sisson):



(Ex. B, at 5.)  Plaintiff claims that the notation "936000 original amt" refers to the SBA loan and that the notation "bank 1557000 1621500" refers to a loan issued to

[5]  Plaintiff has submitted a document (Exhibit E) that states default under the SBA loan occurred when "Borrower [did] not make a payment when due under this Note."  (Ex. E, at 26.) However, Plaintiff has not argued that Sisson was aware of the contents of this document. (*Cf.* Supp. Br. 5 ("In addition, within the folder there was a handwritten note with Denver Defenses [sic] loan balances [Exhibit B], Sisson's 504 Loan application with Self-Help [Exhibit C], three Contract for Deed contracts [Exhibits H–J], and a draft Management Agreement dated December 20, 2017 [Exhibit K]." (footnotes omitted)).)

Plaintiff by First National Bank. (Supp. Br. 9–10.) Assuming that Plaintiff's interpretation of these cryptic notations is accurate, Exhibit B nevertheless fails, either standing alone or in combination with other evidence submitted, to clearly and convincingly show that Sisson lied about Plaintiff's failure to notify him prior to signing the Management Agreement that Plaintiff was in default on both the SBA loan and the First National Bank loan.

33. To begin with, the notes in Exhibit B are not dated, and the Court agrees with Defendants that it is unclear when Sisson wrote them. (Mem. in Opp'n 6.) To the extent that Plaintiff contends the notation "12/19" in the middle of the document means that Sisson wrote the notes on 19 December 2017, the Court concludes that Plaintiff has not presented sufficient evidence to support this contention.

34. And even if the Court were to determine that Sisson did, in fact, write the notes on 19 December 2017, the notes on their face do not lead the Court to conclude that Sisson knew Plaintiff was in default on the two loans as of that date. Although Plaintiff argues that the notation "less than 60 past due" establishes that Sisson knew the SBA loan was in default, (Supp. Br. 9), the Court, for the same reasons discussed above in its analysis of Exhibit A, cannot conclude that Sisson understood "less than 60 past due" to mean "in default." With regard to the First National Bank loan, nothing in the notes reflects that Sisson was aware this loan was in default or that Plaintiff was behind on any payments for this loan.

35. Finally, as acknowledged by Plaintiff, at trial, there were a total of four bank loans that were the subject of Issue No. 40. (*See* Supp. Br. 6.) Nonetheless,

Plaintiff invites the Court to rule that Exhibits A and B prove that Sisson knew prior to signing the Management Agreement that Plaintiff was in default on *all four bank loans*, even though Exhibit A refers only to the SBA loan while Exhibit B, at best, refers only to the SBA loan and the First National Bank loan. The Court declines to make such a ruling that, simply put, is not supported by the record.

36.     In sum, the Court concludes that Plaintiff has not proven by clear and convincing evidence that Sisson committed fraud in obtaining a favorable jury verdict on Issue No. 40.

## ii.     *Alleged Fraud Regarding Misrepresentation of Inventory*

37.     At trial, the jury found, as part of Issue No. 38, that Plaintiff provided misleading inventory numbers to Sisson in order to entice him to enter into the Management Agreement. (Verdict Sheet Issue No. 38.)

38.     Plaintiff argues that Sisson was not truly concerned about these misleading inventory numbers because, in Sisson's application to the SBA for funds to purchase Denver Defense (Exhibit C), he listed the purchase price for Denver Defense as $2,900,000.00, which Plaintiff interprets to mean that Sisson intended all along to deduct the overstated value of the inventory, as reported to Sisson by Plaintiff ($400,000.00), from the price that Sisson initially agreed to pay to purchase Denver Defense from Plaintiff ($3,300,000.00). (*See* Supp. Br. 10–11.) In other words, Plaintiff believes that Exhibit C shows that Sisson's "true intentions" were "to compensate [himself] for the inventory discrepancy," a "fact that the jury should have heard." (Supp. Br. 11.)

39. There are several problems with Plaintiff's theory here. First and foremost, Plaintiff fails to articulate a meritorious defense that it was prevented from presenting prior to the entry of the Final Order and Judgment, as required by Rule 60(b)(3). Merely contending that the jury should have heard about Sisson's "true intentions," without more, does not warrant the relief sought by Plaintiff.

40. Relatedly, as Defendants point out, it appears that Plaintiff is not actually challenging the jury's finding that Plaintiff provided misleading inventory numbers to Sisson, but instead is contending Sisson did not really care that he was being misled. (Mem. in Opp'n 8.) As a result, the Court is unable to discern what fraud Plaintiff contends Sisson committed as to that jury finding.

41. To the extent that Plaintiff contends the alleged fraud is Sisson's supposed concealment of his lack of concern about the overstated value of the inventory, that argument is meritless. Indeed, in its supporting brief, Plaintiff recites a portion of Sisson's trial testimony in which he indicated that "[t]he [inventory] *discrepancy really didn't concern me that much* because going in I knew they had no idea what their inventory level was." (Supp. Br. 11 (emphasis added) (quoting Ex. M, at 312).) As such, "the jury did get to hear testimony about [Sisson's] concern or lack thereof over the actual inventory," and even after hearing this testimony, the jury still "found that Plaintiff had misstated its inventory numbers." (Mem. in Opp'n 8.)

42. Simply put, there is no sound basis for setting aside the jury's verdict that Plaintiff provided misleading inventory numbers to Sisson in order to entice him to enter into the Management Agreement.

### iii. *Alleged Fraud Regarding The Ownership of The Range at Denver, Inc.*

43. Plaintiff next asserts that Sisson lied during his deposition about the ownership of an entity called The Range at Denver, Inc. ("The Range at Denver"). According to Plaintiff, when Sisson testified that he was the sole owner of The Range at Denver, he was lying because Sisson's SBA 504 Loan Application (Exhibit C) lists Sisson's wife (Patricia P. Sisson) as "CEO" under the section identifying the ownership of The Range at Denver. (*See* Supp. Br. 11–12.)

44. Based on this information, Plaintiff argues in conclusory fashion that "Sisson deprived both the Plaintiff and this court access to a vital witness who had a substantial role to play in this litigation." (Supp. Br. 12.) This argument is unavailing under Rule 60(b)(3). Plaintiff was required to set forth a meritorious defense that it was prevented from presenting before the Court entered its Final Order and Judgment. Plaintiff has failed to do that here.[6]

45. In addition, Plaintiff has not presented clear and convincing evidence that Sisson lied about the ownership of The Range at Denver. Indeed, as Defendants point out, Sisson signed Exhibit C on the space reserved for "Owner Signature" while his wife signed on the line reserved for "Spouse Signature." (Mem. in Opp'n 9–10.) The Court therefore is unable to conclude from Exhibit C alone that Sisson's wife was also

---

[6] Plaintiff's conclusory argument that Sisson prevented Plaintiff and the Court from accessing a vital witness (Sisson's wife) is undercut by the fact that Sisson's wife was listed in the Court's Final Pretrial Order as an individual that Plaintiff intended to call to testify at trial. (ECF No. 72 ¶ 6.) Plaintiff ultimately and unilaterally decided not to question Sisson's wife at trial.

an owner of The Range at Denver at the time that Sisson testified he was the sole owner of this entity.

46.   In short, Plaintiff is not entitled to relief under Rule 60(b)(3) on the basis of Sisson's alleged fraud regarding the ownership of The Range at Denver.

### iv.   *Alleged Fraud Regarding Contract for Deed*

47.   For the first time in its reply brief, Plaintiff argues that Sisson has fraudulently concealed "his execution of the Contract for Deed that bound him to the transaction's real estate purchase."[7]  (Pl.'s Reply 3, ECF No. 102.)  The Court is not required to consider this argument.  *See, e.g., Hardin v. KCS Int'l, Inc.,* 199 N.C. App. 687, 707–08 (2009) (holding that argument raised for the first time in reply brief was "not . . . properly before the Court"); *see also* BCR 7.7 ("A reply brief must be limited to discussion of matters newly raised in the responsive brief.").  For purposes of a thorough analysis, however, the Court, in its discretion, will address the merits of Plaintiff's argument.

48.   The Court first notes that it appears that Plaintiff's fraud allegation concerning the Contract for Deed is nothing more than an attempt to rehash an issue that the Court previously addressed at a much earlier stage of the litigation: the enforceability of the Contract for Deed.

---

[7]  In its initial brief in support of the Motion, Plaintiff relies on the three versions of the Contract for Deed attached to that brief as Exhibits H through J for the purpose of "[a]uthenticating Sisson's [f]older."  (Supp. Br. 3–4.)  In the argument section of the brief, however, Plaintiff does not make the same allegation about the Contract for Deed that it makes in its reply brief.  (*See* Supp. Br. 8–13.)

49.     The record in this case reveals that the Contract for Deed was the subject of an earlier Motion to Amend Complaint (the "Motion to Amend") filed on 5 June 2019 by Plaintiff and Denver Property Partners, LLC (then a plaintiff in this action).[8] (Mot. to Am. Compl., ECF No. 44.)  Through the Motion to Amend, Plaintiff and Denver Property Partners, LLC sought to add a new claim for breach of contract against Sisson, which was based on a version of the Contract for Deed that Plaintiff and Denver Property Partners, LLC attached to their Motion to Amend.  (*See* Mot. to Am. Compl. Ex. A.)  On 5 August 2019, the Court entered an order denying the Motion to Amend, concluding, among other things, that an amendment allowing a breach of contract claim would be futile, given that the underlying document entitled Contract for Deed (as attached to the Motion to Amend) was not an enforceable contract, but rather, under the record before the Court at the time, a counteroffer that had not been accepted by Plaintiff or Denver Property Partners, LLC.  (*See generally* Order on Pls.' Mot. to Am. Compl., ECF No. 55.)  Although Plaintiff and Denver Property Partners, LLC initially appealed the Court's order denying their Motion to Amend, they later withdrew their appeal.  (*See* ECF Nos. 57, 59.)

50.     In addition, at trial, the parties were not permitted to introduce evidence regarding "[t]he existence of a Contract for Deed, including all versions or drafts, signed or unsigned[,]" pursuant to a *joint* motion in limine filed by the parties.  (Order on J. Mot. in Limine 2, 5, ECF No. 73; *see also* J. Mot. in Limine, ECF No. 65.)

---

[8]  Because Plaintiff argues that Sisson committed fraud in this litigation as to the Contract for Deed, the Court deems it proper, and indeed necessary, to review the entire record in this case to determine when this document may have previously been a point of contention in the litigation between the parties.

51.     Notwithstanding this procedural history surrounding the Contract for Deed, Plaintiff now once again alleges that it has proof that Sisson was obligated to purchase Denver Defense from Plaintiff pursuant to the Contract for Deed and that Sisson ultimately breached that obligation.  (Pl.'s Reply 2–4.)  As support for this allegation, Plaintiff principally relies on Exhibit J to its supporting brief, a document that is virtually identical to the version of the Contract for Deed attached to Plaintiff's earlier Motion to Amend.  (*Compare* Ex. J, *with* Mot. to Am. Compl. Ex. A.)  The only difference between the two documents is that Exhibit J has "agreed to" handwritten at the bottom of the first page, which Plaintiff contends was written by Sisson.  (Ex. J, at 83.)

52.     Plaintiff's counsel argued at the hearing on the Motion that the additional "agreed to" notation on Exhibit J shows that Sisson understood he was bound by the terms of this document.  However, the version of the Contract for Deed attached to Plaintiff's Motion to Amend *was signed by Sisson*, (*see* Mot. to Am. Compl. Ex. A), and the Court nonetheless determined that this version of the Contract for Deed was not an enforceable contract.  Thus, it appears to the Court that Plaintiff is, in effect, using Rule 60(b)(3) to revisit an issue that it could have otherwise pursued through a timely appeal, i.e., whether the Court properly denied Plaintiff's Motion to Amend, which sought to add a breach of contract claim against Sisson based on a version of the Contract for Deed that was signed by Sisson.  This is an improper use of Rule 60(b)(3).  *See, e.g.*, *Chicopee, Inc. v. Sims Metal Works, Inc.*, 98 N.C. App. 423, 431 (1990)

("Erroneous judgments may be corrected only by appeal, and a motion under [Rule 60(b)(3)] cannot be used as a substitute for appellate review.").

53. In any event, the Court concludes that Plaintiff has not presented clear and convincing evidence that Sisson committed fraud with respect to the Contract for Deed. Although Plaintiff argues that Sisson gave false "testimony under oath" regarding the Contract for Deed, (Pl.'s Reply 3), the only relevant testimony that Plaintiff has presented in connection with this contention is from Sisson's deposition, where he testified that he "never signed a notarized copy" of the Contract for Deed, (Ex. L, at 168–69). However, this specific testimony from Sisson has previously been proven to be true and accurate. (*See* Order on Pls.' Mot. to Am. Compl. ¶¶ 17–18.)[9]

54. To summarize, Plaintiff has not proven by clear and convincing evidence[10] that Sisson committed fraud in this action, and, at times (as explained above), Plaintiff has also failed to articulate any meritorious defense (or claim) that it was prevented from presenting prior to the Court's entry of the Final Order and Judgment. In addition, the Court also notes that Plaintiff's counsel conceded during the hearing on the Motion that Sisson did not prevent Plaintiff from presenting at trial the documents that Plaintiff now contends prove Sisson's alleged fraud. Indeed,

---

[9] Plaintiff also represents in its reply brief that "Plaintiff now shows three signed versions of the Contract for Deed that [Sisson] executed and personally maintained in his file, which are detailed in Plaintiff's Brief since they have come to light." (Pl.'s Reply 2.) This is not an accurate statement. Plaintiff has submitted only one version that is signed by Sisson, Exhibit J to its initial supporting brief.

[10] To the extent that a lesser burden of proof may apply, the Court concludes, for all the reasons discussed in this Order and Opinion and on the record before the Court, that Plaintiff has not established any fraud by Sisson, even when Plaintiff's arguments and supporting materials are analyzed under a lesser burden of proof.

the boxes of documents that Plaintiff retrieved from Denver Defense were in Watson's possession before the trial commenced, but Plaintiff's shareholders and their counsel chose to wait to examine the boxes until after the trial ended and the Court entered its Final Order and Judgment. Likewise, Sisson did not cause Watson to forget his password to his Gmail account.[11] For all these reasons, then, the Court concludes that Plaintiff is not entitled to a new trial in this action pursuant to Rule 60(b)(3).

55. One final point bears mention. In response to the Court's questioning during the hearing on the Motion about the documents submitted by Plaintiff in support of the Motion, Plaintiff's counsel accused the Court of making arguments for Defendants. That is not so. What the Court did do was carefully review and scrutinize the arguments and documents presented to the Court by all the parties to assess their strengths and weaknesses so that the Court could ultimately determine whether Sisson committed fraud upon this Court, as alleged by Plaintiff, and whether Plaintiff was entitled to a new trial in this action, nearly a year after the Court's entry of its Final Order and Judgment.

## IV. CONCLUSION

56. For the foregoing reasons, the Court, in its discretion, hereby **DENIES** the Motion in its entirety.

---

[11] The Court confirmed, through Plaintiff's counsel at the hearing on the Motion, that the boxes of documents and e-mails in Watson's Gmail account were in Plaintiff's, and not Sisson's, possession, custody, or control during the discovery phase of this litigation. The Court finds it troubling that Plaintiff clearly failed to review relevant documents in its possession, both before and during the pendency of this litigation, which review would have alerted counsel to their existence, and now blames Sisson for withholding this information from the Court.

**SO ORDERED**, this the 25th day of June, 2021.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases